## McCANN v STATE OF MICHIGAN

1. APPEAL AND ERROR—PLEADING—PRESUMPTIONS.

Every well-pleaded fact and allegation supported by fact in a claim filed with the Court of Claims must be presumed true and viewed in the light most favorable to plaintiff for the purpose of review of summary judgment by the Court of Appeals.

2. APPEAL AND ERROR—STATUTES—WORDS AND PHRASES—INTERPRETATION—PUBLIC POLICY.

The Court of Appeals is mandated by statute in the construction of the statutes of this state to construe words that have acquired "a peculiar and appropriate meaning in the law" according to such peculiar and appropriate meaning; it is not free to adopt another construction merely because it would more closely align itself with the Court's notions of sound public policy (MCLA 8.3a).

3. STATES—MUNICIPAL CORPORATIONS—TORTS—STATUTES—GOVERNMENTAL IMMUNITY.

The state and its lesser political subdivisions are immunized by statute from tort liability, subject to certain statutory exceptions: defective maintenance of roads and public buildings, negligent operation of motor vehicles, and actions which arise out of the government's engagement in a proprietary function; and subject to two judicial exceptions which have continuing vitality: actions grounded in nuisance and actions which allege an uncompensated taking of property (1970 PA 155).

4. STATES—TORTS—GOVERNMENTAL IMMUNITY.

A plaintiff, who commenced an action against the State of Michigan stating in his complaint that certain employees of a state hospital embarked on a campaign to destroy his newspaper business enterprise by contacting various advertisers and customers by telephone and letter attempting to convince them to

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 877.
[2] 5 Am Jur 2d, Appeal and Error §§ 712, 893.
[3, 4] 49 Am Jur, States, Territories and Dependencies § 91.

withdraw their support of plaintiff's newspaper which ultimately led to the insolvency of his business accompanied by mental suffering and anxiety, failed to fit himself within any of the exceptions to the doctrine of governmental immunity and has no tort remedy against the state (1970 PA 155).

Appeal from Court of Claims, James E. Hoff, J. Submitted Division 2 March 8, 1973, at Lansing. (Docket No. 13913.) Decided May 23, 1973. Leave to appeal granted, 390 Mich 765.

Complaint by John F. McCann, doing business as The Weekender, against the State of Michigan, its Department of Mental Health, and the Traverse City State Hospital, for damages for acts of wanton, willful and malicious misconduct by state employees. Summary judgment for defendants. Plaintiff appeals. Affirmed.

*Perlman, Garber & Holtz* (by *Albert L. Holtz*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Maxine Boord Virtue* and *Arthur E. D'Hondt,* Assistants Attorney General, for defendants.

Before: Danhof, P. J., and Holbrook and Bashara, JJ.

Danhof, P. J. Plaintiff appeals from a grant of summary judgment by the Court of Claims dismissing plaintiff's complaint with prejudice as failing to state a claim upon which relief can be granted. GCR 1963, 117.2(1). We affirm.

Plaintiff commenced this action on August 17, 1971 stating in his complaint that he had been the owner and publisher of a newspaper in Traverse City, and that on September 3, 1970 the plaintiff's newspaper commenced publication of a series of

articles concerning the death of one John D. Cronk, a former mental patient at Traverse City State Hospital. The complaint further alleged that the article sought to raise the question of whether John D. Cronk expired from natural causes, criminal activity, negligence or gross negligence on the part of certain hospital personnel.

Plaintiff contends that as a result of the publication of the aforementioned articles, certain employees of the state hospital embarked on a campaign to destroy plaintiff's business enterprise. Plaintiff claims that the medical superintendent of the hospital, administrative officer of the hospital, community relations director of the hospital, and director of nursing, as well as numerous lesser employees, "willfully, wantonly, and maliciously, by persuasion, economic and social pressure, threats and innuendos directed at claimant's customers, advertisers, and claimant himself, did attempt to cause the demise and destruction" of his newspaper. These said employees did this by contacting various advertisers and customers by telephone and letter attempting to convince them to withdraw their support of plaintiff's newspaper.

Plaintiff alleges that as a result of the above-stated activities by state hospital employees, he lost most of his advertising customers. This ultimately led to the insolvency of his business accompanied by mental suffering and anxiety. On April 16, 1971, plaintiff instituted an action in the United States District Court against the above-referred-to state employees in their individual capacity, the substance of this action being identical to that which was subsequently filed in the Michigan Court of Claims.

In its opinion dated February 17, 1972, the Court of Claims states:

"But one may look in vain for any affirmative legislation that manifests an intent on the part of the State of Michigan that it must respond in damages for intentional tortious acts or conduct on the part of employees of State agencies whereby they interfere with or even destroy an established business for profit enterprise or libel or slander the owners and operators thereof.

"The Michigan Court of Claims is a court of limited jurisdiction and the State of Michigan having clearly retained its defense of sovereign immunity in this particular action asserted against it by the plaintiff this Court is simply without any power to afford plaintiff any relief by way of damages on the claim or claims asserted."

A brief review of the complicated judicial and, most importantly, legislative history of governmental immunity in Michigan will be useful. By 1943 PA 237, the state waived its defense of immunity from liability for the torts of its officers and employees. This broad waiver was short-lived, however, for by 1945 PA 87 governmental immunity was restored as a defense, except as to causes of action based on the negligent operation of motor vehicles. By 1960 PA 33, this exception to immunity was broadened to include the negligent operation of aircraft other than military aircraft. Then came the case of *Williams v Detroit*, 364 Mich 231 (1961). Today it is clear that the *Williams* decision achieved but one result and must be interpreted therefore in the light of the separate opinion of Justice BLACK who was the "swing vote". For all of the sweeping language in the opinion by Justice EDWARDS which seemed to shake the doctrine of governmental immunity to its very foundations, the result of *Williams* was to overrule prospectively the *judicial* doctrine of governmental immunity as it applied to *municipal corporations.* Any doubts as to the effect of *Williams* on the immunity of the state and its agencies was erased in

*McDowell v State Highway Commissioner,* 365 Mich 268 (1961). The defense as it applied to the state had become a creature of the Legislature and would not be overruled by the judiciary.

By 1964 PA 170, the Legislature passed "An act to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, when engaged in a governmental function, for injuries to property and persons caused by negligence". The act as passed was obviously designed to effect the following results: (1) to restore the defense of governmental immunity to municipal corporations and lesser political subdivisions, which defense had been abrogated by *Williams,* and to make it uniform with the state's immunity; (2) to adopt and statutorily define the judicially fashioned proprietary-function exception to governmental immunity; (3) to carve out as the only legislative exceptions to immunity actions based on negligent operation of motor vehicles, or defective maintenance of roads and public buildings. *Green v Department of Corrections,* 30 Mich App 648 (1971), *aff'd* 386 Mich 459 (1971).

The constitutionality of § 7, 1964 PA 170, being MCLA 691.1407; MSA 3.996(107), which dealt with governmental immunity from tort liability, came under judicial scrutiny in *Maki v East Tawas,* 18 Mich App 109 (1969). In ruling this section unconstitutional, this Court in an opinion by this writer held:

"We think that the constitutionality of § 7 cannot be sustained if it is construed as applying to all tort liability when the title is limited to negligence. We agree with the point made in the brief on behalf of the intervenor that legislators might have been misled by the title into voting affirmatively, thinking that immu-

nity from liability for negligence desirable, yet not wishing to go so far as to grant immunity from assault and battery, false arrest, invasion of privacy, direct trespass, nuisance, and other torts." *Maki v East Tawas,* 18 Mich App 109, 123 (1969), *aff'd* 385 Mich 151 (1971).

The effect of the *Maki* decision was to temporarily leave the state without immunity from tort liability, since immunity had become a creature of the Legislature and since a key section of the most recent statute had been declared void.

The Legislature acted quickly to cure this defect. By 1970 PA 155, the Legislature amended the title and several sections of the act. The effective date of the amendment was August 1, 1970—more than one month prior to the date on which plaintiff's cause of action allegedly arose. In the title, the words "the exercise or discharge of" were added between the words "engaged in" and "a governmental function". The words "caused by negligence" were deleted:

"An act to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, when engaged in the exercise or discharge of a governmental function, for injuries to property and persons."

Section 7 was reenacted with the only change being the substitution of the word "the" in lieu of the word "said" following the word "wherein" in the first sentence:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity

of the state from tort liability as it existed heretofore, which immunity is affirmed." MCLA 691.1407; MSA 3.996(107).

The effect of the 1970 amendment was to bring § 7 into conformity with the title of the act, thus curing the constitutional infirmity which was the basis of our holding in *Maki, supra.*

For the purpose of our review, each and every well-pleaded fact and allegation supported by fact must be presumed true and viewed in the light most favorable to plaintiff. *Bielski v Wolverine Insurance Co,* 379 Mich 280 (1967); *Beardsley v R J Manning Co,* 2 Mich App 172 (1966). The issue thus becomes whether the Legislature intended by the above act to immunize the state from liability for acts of wanton, willful and malicious misconduct perpetrated by state employees.

Plaintiff urges that the "tort" in this case is not the type which would slow the process of government if allowed to be sued upon; that there is no legitimate governmental function which would be in jeopardy if employees of the state were aware that they could not deliberately attempt to cause the demise of a man's livelihood; and that we should judicially fashion an intentional-wrong exception to the state's tort immunity in much the same way that our courts and the Legislature have molded the proprietary-function exception thereto. *Bofysil v Highway Department,* 44 Mich App 118 (1972).

However attractive this invitation might be, such an attempt would require us to engage in judicial legislation of the same nature eschewed by this Court and our Supreme Court in *Maki, supra.* The issue there was whether the Legislature clearly understood the impact of the distinction between "torts" and "negligence". However, it

would be a dangerous use of hindsight indeed for us to say that the Legislature failed in 1970 to realize the distinction between intentional torts and negligent torts when it chose to retain the all-encompassing term of "tort liability" in § 7. Furthermore, we are mandated by MCLA 8.3a; MSA 2.212(1) to construe words that have acquired "a peculiar and appropriate meaning in the law" according to such peculiar and appropriate meaning. We are not free to adopt another construction merely because it would more closely align itself with our notions of sound public policy. By its terms, 1970 PA 155 immunizes the state and lesser political subdivisions from tort liability, subject to certain statutory exceptions, *i.e.,* defective maintenance of roads and public buildings, negligent operation of motor vehicles, and actions which arise out of the government's engagement in a proprietary function. We would add to this list of legislative exceptions, two judicial exceptions which have continuing vitality: actions grounded in nuisance, *Buckeye Union Fire Insurance Co v Michigan,* 383 Mich 630 (1970), and actions which allege an uncompensated taking of property, *Geftos v Lincoln Park,* 39 Mich App 644, 656 (1972).

Plaintiff, however, has failed to fit himself within any of the exceptions to the doctrine of governmental immunity enumerated above. He does not deny that a state hospital as an entity carries on a role that is traditionally classified as a governmental, as opposed to a proprietary, function. He argues, however, that the phrase "in the exercise or discharge of a governmental function" has an active meaning which focuses on the immediate setting occasioning the wrongs complained of. Thus, the argument goes that the state has no immunity in this case because its employees were

not engaged in a governmental function, although they may have believed that they were protecting the state hospital by attacking plaintiff and his business. The argument is tempting, except for the fact that it is grounded in the theory of waiver of immunity by implication and is thus contrary to the second sentence of MCLA 691.1407; MSA 3.996 (107):

"Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

Although plaintiff's complaint sounds in tort, perhaps tortious interference with economic relations and defamation, he has made valiant attempts to argue for the first time on appeal that his cause of action really goes to a state-created nuisance. The origin of nuisance exception seems to be that the creation of the nuisance amounts to a taking of property or alternatively that the government as proprietor of land is subject to the same responsibilities as private landowners. Prosser, Law of Torts (3d ed), § 125, p 1009. There are, however, no conflicting real property interests in the case at bar. We grant that the term "nuisance" encompasses a multitude of evils, but we decline to seize upon the "catchword as a substitute for any analysis of a problem". Prosser, § 87, p 592. Having found that one effect of 1970 PA 155 was to immunize the state from liability for the intentional as well as the negligent tortious acts of its employees, subject to certain legislative and judicial exceptions, and that plaintiff does not come within any of these exceptions, we cannot subvert this finding merely by a change of labels. We are constrained to hold that plaintiff has no tort remedy against the State of Michigan.

Affirmed. No costs, a public question being involved.

All concurred.