PICHETTE v MANISTIQUE PUBLIC SCHOOLS

Opinion of the Court

1. Negligence—Governmental Immunity—Waiver—Liability—Insurance—Statutes.

Immunity from tort liability for negligence of governmental agencies engaged in the exercise or discharge of a governmental function is not waived by the purchase of general liability insurance (MCLA 691.1407, 691.1409).

2. Negligence—Tort Liability—Governmental Agencies—Public Building—Statutes.

A slide on a school playground, even though anchored in concrete, is not a public building within the contemplation of the statute providing that governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building (MCLA 691.1406).

---

References for Points in Headnotes

[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 57, 58.

Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability. 68 ALR2d 1437.

[2, 4–7] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 155.

68 Am Jur 2d, Schools §§ 323–325.

Tort liability of public schools and institutions of higher learning for accidents occurring during use of premises and equipment for other than school purposes. 37 ALR3d 712.

Tort liability of public schools and institutions of higher learning for injuries due to condition of grounds, walks, and playgrounds. 37 ALR3d 738.

Tort liability of public schools and institutions of higher learning for accidents due to condition of buildings or equipment. 34 ALR3d 1166.

Tort liability of public schools and institutions of higher learning. 86 ALR2d 489.

[3] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 60.

Municipal immunity from liability for torts, 60 ALR2d 1198.

3. SCHOOLS AND SCHOOL DISTRICTS—GOVERNMENTAL AGENCIES—TORT
   LIABILITY—PROPRIETARY FUNCTIONS—GOVERNMENTAL FUNC-
   TIONS—GOVERNMENTAL IMMUNITY—STATUTES.

   A school district which maintained a school playground from
   which it received no corporate benefits and derived no pecuni-
   ary profit was engaged in the exercise or discharge of a govern-
   mental function and not in a proprietary function and is
   immune from tort liability by explicit legislative declaration
   (MCLA 691.1407).

DISSENT BY HOLBROOK, P. J.

4. SCHOOLS AND SCHOOL DISTRICTS—NEGLIGENCE—IMMUNITY—GOV-
   ERNMENTAL FUNCTIONS—VACATION PERIODS.

   *Immunity from tort liability is not available to a school district
   for an accident and injury on a slide on its playground occur-
   ring when it was not operating the school for educational
   purposes due to the official suspension of the school year for an
   extended vacation period.*

5. SCHOOLS AND SCHOOL DISTRICTS—NEGLIGENCE—IMMUNITY—DE-
   FENSES—GOVERNMENTAL FUNCTIONS—SUMMER VACATIONS.

   *A child who was injured on a school playground during the
   summer vacation period when the school was closed should be
   allowed to show that he was injured during a period when the
   educational function of the school district had been officially
   suspended by the appropriate school authority, and if such
   proof is presented, the defendant school district should thereaf-
   ter be precluded the claim of governmental immunity as a
   defense (MCLA 691.1407).*

6. SCHOOLS AND SCHOOL DISTRICTS—PLAYGROUNDS—PUBLIC BUILDINGS
   —GOVERNMENTAL IMMUNITY—CONSTITUTIONAL LAW—EQUAL
   PROTECTION—STATUTES.

   *Allowing a remedy to an injured victim of a defect in equipment
   permanently affixed in a public building while not allowing a
   remedy to an injured victim of a defect in equipment perma-
   nently affixed outside the public building but on public land, is
   a distinction between classes of victims totally without rational
   foundation and is constitutionally infirm on equal protection
   grounds; the definition of a public building in the statute
   providing that governmental agencies are liable for injury and
   property damage resulting from a dangerous or defective condi-
   tion of a public building should be expanded to include the
   immediate outside physical environs owned, controlled and
   considered a necessary part of the governmental function of the*

*building; school playgrounds would be part of school buildings (US Const Am XIV; Const 1963, art 1, § 2; MCLA 691.1406).*

7. SCHOOLS AND SCHOOL DISTRICTS—GOVERNMENTAL IMMUNITY—CONSTITUTIONAL LAW—EQUAL PROTECTION.

*The doctrine of governmental immunity, except in the area of discretionary action by government officials, contradicts the democratic view of the nature of responsible governments, violates the maxim that everyone shall have a remedy for an injury done to his person or property and is questionable from an equal protection standpoint by creating distinctions between persons who are injured by private persons and those injured by agents of the state, and between those entitled to sue the state because of exceptions carved out by the Legislature and those not so entitled; the doctrine has outlived its usefulness, but if it is to be nullified nullification must come from either the Supreme Court or the Legislature (US Const, Am XIV: Const 1963, art 1, § 2).*

Appeal from Schoolcraft, William F. Hood, J. Submitted Division 3 October 5, 1973, at Marquette. (Docket No. 16384.) Decided December 6, 1973. Leave to appeal applied for.

Complaint by Louis Pichette for himself and as next friend of Jeffrey Pichette against Manistique Public Schools for injuries resulting from negligence. Summary judgment for defendant. Plaintiff appeals. Affirmed.

*Nino E. Green,* for plaintiff.

*Hansley, Neiman, Peterson & Beauchamp,* for defendant.

Before: HOLBROOK, P. J., and BASHARA and O'HARA,* JJ.

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

O'HARA, J. This is an appeal of right by plaintiff[1] from an adverse summary judgment. Such a judgment, as the opinions of appellate courts in this state show, is becoming increasingly rara avis.

The case arises out of an injury to a minor plaintiff who was using a slide in the defendant's playground which was immediately adjacent to the school proper. The record rests in part upon a stipulation of fact, and in part upon the testimonial record. The child was seriously and painfully injured. It cannot be gainsaid that absent the doctrine of governmental immunity defendant might well have been subject to a summary judgment against it on the question of liability, leaving only the assessment of damages to the jury. Here is what happened.

The minor's parents were visiting in Manistique, a charming community in the Upper Peninsula nestled tight on the shore of Lake Michigan. The plaintiff's injury occurred on July 17, 1971. The defendant school was closed for the summer vacation. No classes were being conducted. The playground was unattended, unfenced, and completely accessible. The child was not a trespasser. The doctrine of attractive nuisance is inapplicable. Plaintiff was some 11 or 12 years old when injured. He climbed up the slide and slid down in the fashion in which the slide would be expected to be used. The sideboards of the slide were wooden, attesting to its venerable vintage. They were in disrepair, with ragged slivers projecting. Plaintiff sliding down, caught an 11-inch sliver in his thigh. He was rushed to the hospital. Emergency surgery was required to remove the sliver. The treating physician, with commendable and

---

[1] We use the term *plaintiff* although strictly his duly appointed next friend is the plaintiff of record.

understandable concern, called the city police. The slide was immediately cordoned off. The following day the slide was knocked down. It had been imbedded in a concrete footing. The remnants were hauled away to the city dump.[2]

The trial judge favored us with a terse but comprehensive written opinion. He found first that conducting a school is a governmental function. He pointed out that under the traditional tests the maintenance of the playground by the school was not proprietary in nature because it was not conducted for profit or for the school's private advantage or emolument. He held that the purchase of public liability insurance by the school did not constitute a waiver of any of its defenses under the governmental immunity doctrine for the simple reason that the Legislature by statute said so.[3] Finally, he found that the slide, though anchored to the realty by concrete, was not a "building" within the contemplation of the statute[4] and thus no exception to the shield of governmental immunity. He faced and answered every basis for recovery by plaintiff save one which we will discuss in detail later herein.

The controlling statutory enactment provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function." MCLA 691.1407; MSA 3.996(107).

The other applicable statutory excerpt here involved reads:

---

[2] Later retrieved and available at the time of trial.

[3] MCLA 691.1409; MSA 3.996(109).

[4] MCLA 691.1406; MSA 3.996(106).

"The existence of any policy of insurance indemnify-
ing any governmental agency against liability for dam-
ages is not a waiver of any defense otherwise available
to the governmental agency in the defense of the
claim." MCLA 691.1409; MSA 3.996(109).

We will address ourselves to the grounds of
appeal asserted. We do not treat them in the order
chosen by plaintiff in his brief because some call
for more decisional discussion than others. We
note at this point also that there is no useful
service to trial bench or bar by launching into an
historical analysis of opinions of by-gone days
dealing with the turbulent course of governmental
immunity in this state. We take the law as we find
it today and leave the discussion of "trends" and
legal-philosophical preferences to jurisprudential
academia and our Supreme Court. Such we think
is the proper role of an intermediate appellate
court in situations where clear statutory enact-
ments (not unconstitutional) and decisions of the
Supreme Court prevail. This irrespective of our
own views to the contrary.

So we take up the specifications of error. The
first one we discuss is a two-in-one question. First,
says plaintiff, if we hold that the defense of gov-
ernmental immunity is not waived by the pur-
chase of general liability insurance, then in that
event, defendant's employees are liable for their
own negligent acts *dehors* the shield of immunity.

It seems to us that the stated question contains
a *non sequitur.* We are unable to relate part one
causally or sequentially to part two. We answer
thus.

As to part one, no, defendant did not waive any
immunity by the purchase of liability insurance
because the statute says so in language so clear
and unequivocal that discussion is not warranted.

As to part two, while the school may be immune, the agent or servants might well be personally liable. We do not discuss this nor decide it. The agents or servants, whoever they may be, were not designated defendants. No specific allegations of negligence against any particular person functioning in a representative capacity are made. No such party is a named defendant. The issue simply is not before us.

We reject plaintiff's argument that the slide in question was a "building" within the statutory exemptions. We read this exemption to mean that in the present-day complex relationship between citizens and governmental agencies the citizen must of necessity go into public buildings for an infinity of reasons. He must do so to get a permit to put an addition on his house, to license his dog, to pay certain of his tax bills, even in some cases to build a bonfire in his backyard. This, we think, is the reason the Legislature required that public buildings be safely maintained. We do not believe that in the usual commonly accepted sense of the term a slide in a playground, anchored in concrete or not, is a public "building", statutorily speaking, and we so hold.

Now comes the most complex of the assignments of error and the one most difficult of solution. Plaintiff contends that the operation of a school is undoubtedly a governmental function. However, he argues the maintenance of a playground in vacation periods when no classes are in session and no enrolled students are using the playground as an incident to the regular school curriculum for physical training or recreation, is not. As a subdivision of this argument plaintiff urges that there is nothing sacrosanct about the traditional division of the activities of an agency of the state into

governmental and proprietary functions only. In effect, plaintiff contends there is a gray area which does not possess all the necessary components of either. This, says plaintiff, comes about because the function can vary both in point of time and with the relationship of the injured to the agency. Plaintiff's brief suggests that both these distinguishing characteristics exist in the relationship between plaintiff and the school in the case at bar. First, says plaintiff, because the injured child in this case is a non-enrolled student in defendant school and a stranger to the governmental function of that school. Thus, argues plaintiff, as to him the maintenance of the playground is nongovernmental, and its maintenance falls into a new category which should be designated a "nonessential" governmental function. As such, plaintiff contends the school would be denied the shield of immunity.

Second, plaintiff asserts that because classes had been suspended completely for the summer vacation, not to resume until fall, the school could not be exercising a governmental function because it was not functioning at all. In support of both contentions plaintiff adverts to statutes, to case law, and to learned law review articles. The argument cannot be taken lightly. In *Daszkiewicz v Board of Education,* 301 Mich 212, 223; 3 NW 2d 71, 75–76 (1942), the formula for ascertaining whether a particular function is governmental or proprietary is stated thus:

"The test for determining whether a particular activity engaged in by a public corporation is purely a governmental function or is proprietary in nature is stated in *Gunther v Cheboygan County Road Commissioners,* 225 Mich 619, 621; 196 NW 386, 387 (1923), as follows:

" 'The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability. That it may be undertaken voluntarily and not under compulsion of statute is not of consequence.' "[5]

The test is sound enough. The question is whether it is comprehensive enough. Is there indeed, as plaintiff claims, something in between? The test has two components. One is the presence of the common good of all. The other is the absence of special corporate benefit or pecuniary profit to the governmental agency involved.

It is manifest that defendant school received no corporate benefit from the maintenance of the school playground. It is equally manifest that it derived no pecuniary profit from the operation thereof. By any test of which we are aware, defendant was not engaged in a proprietary function.

What then of the governmental function test. Was the maintenance of the playground for the common good? We think it was. The question plaintiff raises, however, is "common" to and for whom. In this case should it be limited to the Manistique school district, whatever that includes? Or should it include the residents of Ferndale, 400 odd miles away? If the playground was maintained for the common good of Manistique and its environs, how does that "common good" extend to plaintiff in this case?

Because of the legislative-judicial badminton game with governmental immunity as the shuttle-

---

[5] While *Daszkiewicz, supra,* was overruled by *Williams v Detroit,* 364 Mich 231, 252; 111 NW2d 1, 21 (1961), with respect to the judicial doctrine of municipal immunity, the Legislature subsequently enacted its own version of the doctrine. For our purposes the test for governmental function as opposed to proprietary is still valid as to this precise point. *See also Martinson v Alpena,* 328 Mich 595; 44 NW2d 148 (1950), which suffered a fate similar to *Daszkiewicz.*

cock it is of very doubtful value to discuss past decisions and former statutes. At present the legislature is ahead. It spoke statutorily in the two statutes which we adverted to earlier herein. It also addressed itself to what had long been regarded as a judicial prerogative, namely, defining what a proprietary function is.[6] The contest may not yet be over. We note leave has been granted in a published per curiam opinion by this Court released March 22, 1973, which affirmed a summary judgment against a plaintiff suing an agency of government.[7] The grounds of appeal contain another constitutional challenge to the legislative declaration of governmental immunity. Whatever the outcome of that case, our task at this point is to decide this lawsuit on its facts and upon its briefed issues.

We think we know what the Legislature meant when it said quite explicitly and clearly "except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the governmental agency is engaged in the exercise or discharge of a governmental function".

We think it meant that the defendant school was immune from suits against it for tortious acts as long as it was not doing something for its own corporate benefit or for its pecuniary profit. The defendant was doing neither here.

This is not to say that we don't think it is a crying shame that a blameless youngster is seriously injured on a manifestly negligently maintained slide. This the more so because he was using it almost as an invitee and in the manner in

---

[6] MCLA 691.1413; MSA 3.996(113).

[7] *Curry v Detroit,* 49 Mich App 240; 211 NW2d 559 (1973). Leave to appeal was granted by the Supreme Court on September 19, 1973, 390 Mich 774.

which the slide was designed to be used. I speak for the panel when I say that if we could find in judicial conscience some way to submit his claim to a jury we would do so, and require the defendant's insurer to respond if damages were assessed. After all that's what the insurer collected premiums for.

This panel is, however, painfully aware that to permit the suit to be maintained to judgment we would have to strike down two statutes that seem to us to be within the constitutional competence of the Legislature to enact. Otherwise we have to carve out an exception that would be more sympathetic than real. With recorded reluctance we affirm. No costs. The case involves the construction of a statute.

Bashara, J., concurred.

Holbrook, P. J. *(dissenting)*. This writer must dissent. Disagreement with the majority opinion is founded on two bases: (1) MCLA 691.1407; MSA 3.996(107), which exempts governmental agencies from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function, does not apply under the facts and circumstances of this case, and (2), Const 1963, art 1, § 2 and US Const, Am XIV, guaranteeing all citizens equal protection of the laws, require the inclusion of a school playground within the meaning of a "public building" as used in MCLA 691.1406; MSA 3.996(106). A third possible ground, an outright nullification of the defense of governmental immunity, while very appealing to this writer, has unfortunately been foreclosed from consideration by innumerable prior cases acknowledging the validity of the doctrine. However, a brief discussion of this third ground might

be instructive, and perhaps might lead to a complete reexamination of governmental immunity by the Supreme Court, a reexamination this writer feels would be helpful to the jurisprudence of the state. Therefore, the rationale behind the doctrine of governmental immunity will be briefly analyzed after discussing the substance of this dissent.

## I

Though the doctrine of governmental immunity remains a valid defense to a charge of negligence levied against a governmental agent or agency, the doctrine is not applicable here. Contrary to the opinion of the majority, this writer believes that the statute under which governmental immunity is claimed is by its own language inapplicable to the facts of this case. MCLA 691.1407; MSA 3.996(107) reads:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

The key words of the statute are *"engaged in the exercise or discharge of a governmental function"*. These are active words, denoting the actual operation of a governmental agency. The test for the existence of a governmental function was stated in *Gunther v Cheboygan County Road Commissioners,* 225 Mich 619, 621; 196 NW 386, 387 (1923):

" 'The underlying test is whether *the act* is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no

liability; if it is not, there may be liability. That it may be undertaken voluntarily and not under compulsion of statute is not of consequence.'" (Quoting from *Bolster v City of Lawrence*, 225 Mass 387; 114 NE 722; LRA 1917B, 1285.) (Emphasis supplied).

See, also, *Daszkiewicz v Detroit Board of Education*, 301 Mich 212; 3 NW2d 71 (1942). When the school district is not *acting*, that is, is not operating the school for educational purposes due to the official suspension of the school year for an extended vacation period, the school district is not "exercising or discharging" its governmental function of education. Under this view, plaintiff should be allowed to show that he was injured during a period when the educational function of the school district had been officially suspended by the appropriate school authority. If such proof is presented, the defendant should thereafter be precluded the use of governmental immunity as a defense. This writer recognizes that an abrogation of the doctrine of governmental immunity in this way may seem contrived. Perhaps a fictional elaboration of the facts of this case would allay such skepticism. Posit a situation where at the last school district meeting before summer vacation begins the Manistique school board decided to close permanently the school building outside of which the plaintiff received his injury. Were the building locked up in June, and plaintiff injured in July, would it not be reasonable to say that since the grounds had been officially abandoned in June, the school district was no longer engaged in the governmental function of education on the school grounds, and therefore governmental immunity was not a defense to an action in negligence brought by the plaintiffs? What if the school building and grounds were permanently closed in June, but the school district

decided to reopen them at their meeting in September because a new replacement school was yet unfinished contrary to earlier expectations? Would it not be a contrived result to deny plaintiff recovery in one situation but not the other? And is it not equally contrived to deprive the injured plaintiff recovery under the facts of this case, assuming he was injured during an official vacation period?

## II

The second ground for dissenting from the majority's affirmation of the trial court's decision is constitutionally based. Had plaintiff been injured on equipment permanently affixed inside the school building, the defendant could not have used the defense of governmental immunity because of MCLA 691.1406; MSA 3.996(106). That statute reads in pertinent part:

"Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition *of a public building* if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. Knowledge of the dangerous and defective condition *of the public building* and time to repair the same shall be conclusively presumed when such defect existed so as to be readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place." (Emphasis supplied.)

Defects "of" a building mean defects in equipment permanently affixed "in" the building, according to *Green v Department of Corrections,* 386 Mich 459;

192 NW2d 491 (1971). The mere happenstance of plaintiff's injury on playground equipment permanently affixed outside the building allowed the defendant herein to use the defense of governmental immunity, according to a literal definition of the word "building". However, allowing a remedy to an injured victim of a defect in equipment permanently affixed *in* a public building while not allowing a remedy to an injured victim of a defect in identical equipment permanently affixed *outside* the public building but on public land is a distinction between classes of victims totally without rational foundation. *Jones v Bouza,* 7 Mich App 561; 152 NW2d 393 (1967), *aff'd,* 381 Mich 299; 160 NW2d 881 (1968); *Weber v Aetna Casualty & Surety Co,* 406 US 164; 92 S Ct 1400; 31 L Ed 2d 768 (1972). The school playground area to which the slide was permanently affixed is within the same power of control of school officials and the school maintenance staff as is the school building itself. Furthermore, the presumed rationale behind excluding public buildings from the blanket protection of the defense of governmental immunity, *i.e.,* because public buildings, like public highways, are open to the public and used so often that the public has a right to expect to be safe when using them, applies equally to much-used playgrounds adjacent to public schools. The reasons enunciated in part III of this opinion that allegedly serve as a rationale for the continuing validity of the defense of governmental immunity simply do not bear a reasonable relationship to the classification of victims pursuant to the statutory scheme prescribed for governmental immunity. On its face, therefore, the immunity statute questioned here appears to be constitutionally infirm on equal protection grounds. *Jones, supra; Weber, supra.* However, whenever possible courts are bound to construe

statutes so as to give them validity and reasonable operation, rather than hold them unconstitutional. *Evans Products Co v State Board of Escheats,* 307 Mich 506; 12 NW2d 448 (1943). Accordingly, in order to save the constitutionality of the statute this writer would expand the definition of "public building" in MCLA 691.1406; MSA 3.996(106) to include not only that which one normally regards as a building, but also the immediate outside physical environs owned, controlled, and considered a necessary part of the essential governmental function of the building. See *contra, Cody v Southfield-Lathrup School District,* 25 Mich App 33; 181 NW2d 81 (1970). Thus, school playgrounds would be part of "school buildings", since there is little doubt that school playgrounds are essential to the governmental function of education for which a school building is used.

Therefore, on either the first or second ground enunciated above, this writer would reverse the order of the trial judge granting summary judgment to the defendant and allow plaintiffs to proceed with their suit.

### III

Governmental immunity is derivative of the feudal idea that "the king can do no wrong". Prosser, Torts (3d ed), § 125, p 996. Dean Prosser, in his brief historical analysis of the doctrine of governmental immunity, cogently expresses the anomaly of the doctrine within the American system of jurisprudence, *supra,* at p 997: "Just how this feudal and monarchistic doctrine ever got itself translated into the law of the new and belligerently democratic republic in America is today a bit hard to understand". We are no longer a new republic, but still belligerently democratic

about our principles, and governmental immunity makes less sense today than it ever has.

Governmental immunity is an affront to the principle that the American government was created *for* the people. It contradicts the democratic view of the nature of responsible governments:

" 'States or bodies politic are to be considered as moral persons, having a public will, capable and free to do right and wrong inasmuch as they are collections of individuals each of whom carries with him into the service of the community the same binding law of morality and religion which ought to control his conduct in private life.' " 1 Kent's Comm 3. 18 McQuillin, Municipal Corporations (3d ed), § 53.01a, p 106.

Moreover, "Immunity fosters neglect and breeds irresponsibility, while liability promotes care and caution," which care and caution is owed by the government to its people. *Rabon v Rowan Memorial Hosp, Inc,* 269 NC 1, 13; 152 SE2d 485, 493 (1967). Governmental immunity also violates the common law maxim that everyone shall have a remedy for an injury done to his person or property. See the discussion at 57 ALR 419; but *cf. Firemen's Ins Co of Newark, NJ v Washburn County,* 2 Wis 2d 214; 85 NW2d 840 (1957).

Governmental immunity is also a questionable doctrine from an equal protection standpoint. Const 1963, art 1, § 2; US Const, Am XIV. In *Reich v State Highway Dept,* 386 Mich 617; 194 NW2d 700 (1972), the Supreme Court of Michigan cited in a footnote *Krause v Ohio,* 28 Ohio App 2d 1; 274 NE2d 321 (1971), wherein Ohio's doctrine of governmental immunity was held unconstitutional. *Krause* was eventually reversed in *Krause v Ohio,* 31 Ohio St 2d 132; 285 NE2d 736 (1972). The Ohio intermediate appellate court had argued that the distinction between persons who are injured by

private persons and those injured by agents of the state and between those entitled to sue the state because of exceptions carved out by the Legislature and those not so entitled, is a classification which violates the equal protection clause of the fourteenth Amendment of the United States Constitution. The Court in *Krause* stated, at 28 Ohio App 2d 11; 274 NE2d 327:

"A distinction so based is capricious and represents no policy but an arbitrary attempt to lift state responsibility without reason. In such circumstances the permissible line between reasonable classification or a rational policy, and a denial of equal protection is crossed. This fatally offends the Constitution."

This writer agrees with the basic principle upon which the *Krause* decision was rendered. Unfortunately, *Krause* represents a case with a particularly weak set of facts, since there the governor was charged with negligently calling out the national guard during the Kent State University confrontation which resulted in the death of four Kent State students. Government officials, with important discretionary functions or duties, could not operate either efficiently or effectively if their *discretionary* acts were subject to suits on grounds of negligence or otherwise. Thus, while the *Krause* Court correctly noted that the general doctrine of governmental immunity violated equal protection guarantees, it overextended the principle to abrogate the special freedom from liability enjoyed by government officials when performing *discretionary* functions. This freedom is not derivative from the common-law doctrine of sovereign immunity, whose historical origin is in non-democratic governmental institutions, but rather is fundamental to the very character of our democratic institutions and elective positions, which are made re-

sponsive to the wishes and complaints of the people *only* through the ballot box. Hence, an abrogation of the doctrine of governmental immunity on equal protection grounds would not, contrary to the holding of the *Krause* Court, make the governor of Ohio subject to a negligence action for calling out the national guard, since his decision would clearly be a discretionary act. If the governor's discretionary action were deemed reckless by the body politic because of its unfortunate results, the governor would need answer for his decision on election day. Contrariwise, the nullification of the doctrine of governmental immunity would allow suit against a school board for failing to see that school playground equipment was properly maintained, since such common maintenance supervision would not be a discretionary function of the school board.

It is notable, in passing, that the distinction that would preserve the defense of governmental immunity in the area of discretionary action by governmental officials has been made part of Federal law. 28 USC 1346(b) gives the Federal district court jurisdiction over tort suits against the Federal government, subject to the exceptions outlined in chapter 171 of 28 USC. 28 USC 2680(a) reads:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be· valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

For recent cases interpreting this statutory distinc-

tion, see *United States v Muniz,* 374 US 150; 83 S Ct 1850; 10 L Ed 2d 805 (1963); *Nelms v Laird,* 442 F2d 1163 (CA 4, 1971), *reversed on other grounds,* 406 US 797; 92 S Ct 1899; 32 L Ed 2d 499 (1972); *Spillway Marina, Inc v United States of America,* 445 F2d 876 (CA 10, 1971). The Federal courts have had no difficulty in applying the discretionary function distinction on a case by case basis.

Of course, there are a number of arguments put forward as justification for the doctrine of governmental immunity: (1) it protects the state against nuisance suits; (2) it prevents the depletion of the tax fund; (3) it prevents the disruption of financial planning within the state government; and (4) it is a useful doctrine for "public policy" reasons. The availability of insurance at nominal public costs (compared to the expense an individual tort victim must bear when the state is the tortfeasor) undermines the continuing validity of the first three above reasons. In earlier days insurance was as rare as contact with the government, and this perhaps justified the use of governmental immunity as a defense. Insurance, public and private, is now a major part of modern life, as is daily contact with government employees and public property. Correspondingly, the rationale for governmental immunity as a defense has disappeared. The fourth argument made on behalf of the defense of governmental immunity, that of "public policy", is answered curtly and persuasively by Prosser, *supra,* at 1001, 1004–1005:

"The immunity is said to rest upon public policy; the absurdity of a wrong committed by an entire people; the idea that whatever the state does must be lawful, which has replaced the king who can do no wrong; the very dubious theory that an agent of the state is always outside of the scope of his authority and employment

when he commits any wrongful act; reluctance to divert public funds to compensate for private injuries; and the inconvenience and embarrassment which would descend upon the government if it should be subject to such liability. * * *

"Virtually all writers have agreed that no one of these reasons for denying liability is sound, and all of them can be found to have been rejected at one time or another in the decided cases. The current of criticism has been that it is better that the losses due to tortious conduct should fall upon the municipality rather than the injured individual, and that the torts of public employees are properly to be regarded, as in other cases of vicarious liability, as a cost of the administration of government, which should be distributed by taxes to the public."

Despite this writer's belief that the doctrine of governmental immunity has outlived its usefulness and has lost its rationale, if it is to be nullified nullification must come from either the Supreme Court or the Legislature. The judicial history of the doctrine in this state prevents this Court from acting on its own.