*In re* JONES ESTATE

JONES v STATE

1. STATES—STATE AGENCIES—GOVERNMENTAL IMMUNITY—STATUTES.

An action for tort liability against a state governmental agency is normally barred unless the plaintiff can bring the action under one of the statutory exceptions to governmental immunity (MCLA 691.1407).

2. CONSTITUTIONAL LAW—STATE HOSPITALS—GOVERNMENTAL IMMUNITY—EQUAL PROTECTION—DUE PROCESS—STATUTES.

The statute extending to the officers of a state mental hospital immunity from liability for the actions of released or escaped patients is not violative of equal protection and due process; the statute is founded upon a reasonable basis, it is not an arbitrary and unreasonable variance in the treatment of classes of people, there is a relationship between the classification and the purpose of the act in which it is found and the enactment is not a capricious and arbitrary exercise of legislative powers (MCLA 330,38[a]).

3. COURTS—COURT OF CLAIMS—JURISDICTION.

The Court of Claims, with the exception of possible remedies in federal courts, has exclusive jurisdiction over claims and demands against the state or any of its departments, commissions, boards, institutions, arms or agencies (MCLA 600.6419, 600.6440).

4. STATUTES—DEFINITIONS—STATE HOSPITALS—GOVERNMENTAL IMMUNITY.

A statute expressly providing definitions of the terms used therein makes such definitions binding on courts; thus where a

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 69–72.

[2, 4] 40 Am Jur 2d, Hospitals and Asylums §§ 20–25.
Liability of one releasing institutionalized mental patient for harm he causes, 38 ALR3d 699.

[3] 20 Am Jur 2d, Courts § 33.

statute states specifically which staff members in a state mental hospital are defined as officers, and another statute provides that officers of state mental institutions are not liable for damages for an act of an escaped patient, a suit seeking such damages against such individual officers cannot be maintained (MCLA 330.13, 330.38[a]).

Appeal from Court of Claims, Leo B. Bebeau, J., and from Saginaw, Joseph R. McDonald, J. Submitted Division 2 March 11, 1974, at Lansing. (Docket Nos. 15778, 15779.) Decided April 29, 1974. Leave to appeal denied, 392 Mich 770.

Complaints by William Jones, administrator of the estates of Lawrence and Marie Jones, against the State of Michigan, Department of Mental Health, Traverse City State Hospital, and others, for negligence. Judgments for defendants. Plaintiff appeals. Affirmed.

*Cicinelli, Mossner, Majoros, Harrigan & Alexander,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Roderick T. MacGillis* and *Thomas R. Wheeker,* Assistants Attorney General, for defendants.

Before: HOLBROOK, P. J., and ALLEN and VAN VALKENBURG,* JJ.

HOLBROOK, P. J. On or about October 31, 1970, Lawrence C. Jones escaped from the Traverse City State Hospital, returned to Saginaw, shot and killed his wife, Marie, and shot himself. He died a few days later. Mr. Jones, age 61, had been committed to the Traverse City State Hospital on June

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

25, 1970, as an alcoholic patient in need of care and treatment.

William D. Jones was appointed administrator of the estates of both deceased parties. On June 14, 1972, he commenced a wrongful death action in the Court of Claims, alleging negligence on the part of the state and naming the state as defendant, along with the Department of Mental Health and the Traverse City State Hospital. On September 27, 1972, a companion action against the state, the Traverse City State Hospital and certain individuals was commenced in Saginaw County Circuit Court.

Representing the state, the office of the attorney general filed a motion for summary or accelerated judgment in the Court of Claims on July 6, 1972. The motion was heard on September 27, 1972, and was granted. The office of the attorney general also represented the defendants in the Saginaw County action. In that court, the defendants filed a motion for accelerated judgment claiming that they were immune from suit and that the Saginaw County Circuit Court lacked jurisdiction over the claims in question. These motions were heard November 20, 1972, and on November 27, an order issued granting accelerated judgment and the motion to dismiss as to all parties.

Claims of appeal were filed for both cases on November 27, 1972. An order consolidating these cases was entered by this Court on December 18, 1972. On December 26, 1972, appellant filed an application for bypass with the Supreme Court, which was denied February 28, 1973.

Appellant has set out a number of questions, but asserts that as a general proposition "these combined cases attack the doctrine of sovereign and/or governmental immunity on constitutional

grounds".[1] He attacks both the generalized statement of immunity from tort liability found in MCLA 691.1407; MSA 3.996(107) and MCLA 330.38a; MSA 14.828(1), which states:

"Neither the state nor any medical superintendent nor officers of any institution named in this act shall be liable for damages for any act of any patient paroled, discharged or escaped therefrom."

The law on the subject of governmental immunity is uncertain at the present time,[2] and it is of doubtful value to give a detailed recitation of past decisions and statutes. Nullification or modification, if it is to come, must emanate from the Supreme Court or the Legislature. We must here decide on the existing state of the law and on the facts of this lawsuit. *Pichette v Manistique Public Schools,* 50 Mich App 770, 778–779, 789–790; 213 NW2d 784, 787–788, 792–793 (1973). It appears under present law that if a plaintiff cannot bring an action under one of the statutory exceptions to governmental immunity, then the action is nor-

---

[1] "[S]trictly speaking 'sovereign' immunity and 'governmental' immunity are not synonymous. True, they have been over the years used interchangeably in decisions, but a delineation may be helpful. *Sovereign immunity is a specific term limited in its application to the state and to the departments, commissions, boards, institutions, and instrumentalities of the state.* The reason is the state is the only sovereignty in our system of government, except as the states delegated part of their implicit sovereignty to the Federal government. US Const, Am 10, provides:

" 'The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.' " (Emphasis supplied.) *Myers v Genesee County Auditor,* 375 Mich 1, 6–7; 133 NW2d 190, 191 (1965).

[2] Cases pending before the Supreme Court on this problem are: *McCann v Michigan,* 47 Mich App 326; 209 NW2d 456 (1973), *lv granted* 390 Mich 765, and *Curry v City of Detroit,* 49 Mich App 240; 211 NW2d 559 (1973), *lv granted* 390 Mich 774. *Pichette v Manistique Public Schools,* 50 Mich App 770; 213 NW2d 784 (1973), with leave held in abeyance pending the outcome of *Curry, supra,* and *Pittman v City of Taylor,* CA order #14881, Supreme Court #55472, order 3/27/74.

mally barred. *Campbell v City of Detroit,* 51 Mich App 34, 37; 214 NW2d 337, 338 (1973). As this case does not properly fit within the exceptions found in MCLA 691.1401 *et seq.;* MSA 3.996(101) *et seq.,*[3] we are unable to hold that this action should go forward.

"This Court cannot carve out a large exception to the principle of sovereign immunity absent clear authority from the Supreme Court. The argument is properly directed to them." *Kelley v East Lansing,* 50 Mich App 511, 514; 213 NW2d 557, 558 (1973).

See, also, *McCann v Michigan,* 47 Mich App 326, 333; 209 NW2d 456, 459 (1973), *lv granted* 390 Mich 765.

Appellant has attacked the statutory immunity of MCLA 330.38a; MSA 14.828(1), on the basis of equal protection and due process. In *Wilkins v Ann Arbor City Clerk,* 385 Mich 670, 679–680; 189 NW2d 423, 427 (1971), the Supreme Court wrote:

"Traditionally, statutes have been upheld as constitutional under the equal protection clause if they met the following test:

" ' "1. The equal protection clause of the Fourteenth Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having *some reasonable basis* does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, *if any state of facts*

[3] Exceptions are: (1) injury from defective highway, under MCLA 691.1402 to 691.1404; MSA 3.996(102) to 3.996(104); (2) liability for negligent operation of government-owned vehicles, MCLA 691.1405; MSA 3.996(105); and (3) dangerous or defective conditions of a public building, MCLA 691.1406; MSA 3.996(106).

*reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." ' Naudzius v Lahr,* 253 Mich 216, 222–223; 234 NW 581, 583 (1931).

"However, a different test has been used in two separate types of cases. First, if the asserted classification was on the basis of race or other disfavored classification, the state has to meet 'the very heavy burden of justification * * * .' *Loving v Virginia;* 388 US 1, 9; 87 S Ct 1817; 18 L Ed 2d 1010 (1967), and (p 11):

" 'At the very least the Equal Protection Clause demands that racial classification, especially suspect in criminal statutes, be subjected to the "most rigid scrutiny," *Korematsu v United States,* 323 US 214, 216; 65 S Ct 193; 89 L Ed 194 (1944), and, if they are ever to be upheld, they must be shown to be necessary to the accomplishment of some permissible state objective independent of the racial discrimination which it was the object of the Fourteenth Amendment to eliminate.'

"The second group of cases requiring the higher standard involved the assertion of a fundamental constitutional right.

" 'But in moving from State to State or to the District of Columbia appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling governmental interest,* is unconstitutional.' [Emphasis in original.] *Shapiro v Thompson,* 394 US 618, 634; 89 S Ct 1322; 22 L Ed 2d 600 (1969)." (Emphasis supplied.)

See, also, *Reich v State Highway Dept,* 386 Mich 617, 623; 194 NW2d 700, 702 (1972). It appears that the statute here in question is founded upon a reasonable basis, that it is not an arbitrary and unreasonable variance in the treatment of classes. This is not the caliber of cases which requires a very heavy burden of justification nor is it neces-

sary to show the promotion of a compelling governmental interest. There is a relationship between the classification and the purpose of the act in which it is found. See *Fox v Employment Security Comm,* 379 Mich 579, 588; 153 NW2d 644, 647 (1967). Nor is this enactment a capricious and arbitrary exercise of legislative power for due process purposes. *Reich, supra,* pp 621–622; NW2d 701–702; *Grubaugh v City of St Johns,* 384 Mich 165; 180 NW2d 778 (1970). To hold otherwise in a case of this kind would be to step backwards in the progression of enlightened attitudes toward mental illness and its treatment. To say that, in such situations, the state, its organs and officers, publicly charged with the care and treatment of mental illness, would not be immune from suit and liability[4] is regressive. From medieval days until relatively recent times, the treatment of mental illness was merely the sequestering of individuals in cells. We approve the following comment of the assistant attorney general in the Saginaw County action as to MCLA 330.38a; MSA 14.828(1):

"I also would urge upon the court that this section is constitutional, in that it does serve a valid public purpose. Mental institutions are not prisons. Mental institutions are not places where people are consigned to oblivion. There is no sign above our door that says 'Abandon hope, all ye who enter here.'

"If the state and doctors at the state mental institutions are going to be liable every time a person they have discharged or released on convalescent status or who has escaped; if they're going to be liable for the actions of these persons, we're going to have dungeons or we aren't going to have people working there.

"The stigma of mental illness is still present, but I

---

[4] As to the distinction between immunity from suit and immunity from liability, see, *Manion v State Highway Commissioner,* 303 Mich 1, 19; 5 NW2d 527, 528 (1942), dissenting opinion of Justice Bushnell.

think that there is a gradual awakening by the people to the fact that mentally ill people can be treated and controlled and returned to the community, and without this statutory immunity, in effect, every time a mistake is made in returning a person to the community, it's going to be that much harder for someone else to get out."

As to the state and Traverse City State Hospital, the Saginaw County action was properly dismissed for lack of jurisdiction. With the exception of possible remedies in Federal courts, MCLA 600.6440; MSA 27a.6440, the Court of Claims has exclusive jurisdiction over claims and demands against the state or any of its departments, commissions, boards, institutions, arms or agencies. MCLA 600.6419; MSA 27a.6419. The constitutionality of this jurisdiction has been passed upon and upheld. *Glass v Dudley Paper Co,* 365 Mich 227; 112 NW2d 489 (1961); see, also, *Hirych v State Fair Comm,* 376 Mich 384, 389; 136 NW2d 910, 912 (1965).

It is certainly not difficult to understand that immunity is conferred upon the operation of state public health hospitals. See, for instance, Prosser, Torts (3d ed), § 125, p 1006. This is to be compared with *Lykins v People's Community Hospital,* 355 F Supp 52 (ED Mich, 1973), where Judge Feikens held that the day to day operations of a community public hospital were proprietary and, thus, the assertion of governmental immunity was inappropriate.

While the custodian of an insane person may be liable when he fails to exercise reasonable care under the circumstances, he is ordinarily not liable for tortious acts of such persons which he could not reasonably anticipate. 44 CJS, Insane Persons, § 125, p 282; *cf:* 3 Davis, Administrative Law,

§ 25.14, p 492. It is often the case that individual physicians, even when authorizing discharge or temporary home leave, will not be found liable for actions of mental patients. This is based on the concept that the individual physician must be protected in exercising his discretion as to proper care and therapy for the patient. See: 7 NCCA 4th 247 *et seq.* (1971) and cases therein; also, *Baker v Straumfjord,* 10 Or App 414; 500 P2d 496 (1972).

MCLA 330.13; MSA 14.803 provides:

> "The officers of each institution shall be the medical superintendent, assistant medical superintendent, the assistant physicians, and steward, all of whom, before entering on their respective duties, shall severally take the oath prescribed by the constitution. These officers and all attendants and assistants and employees actually employed in such institutions during the time of such employment, shall be exempt from serving on juries and from all service in the militia; and the certificate of the superintendent shall be evidence of the fact of such employment."

When a statute expressly provides definitions, such definitions are binding on courts. *Bennett v Pitts,* 31 Mich App 530, 534; 188 NW2d 81, 83 (1971); *Woods v Progressive Mut Ins Co,* 15 Mich App 335; 166 NW2d 613 (1968); *W S Butterfield Theatres, Inc v Dept of Revenue,* 353 Mich 345; 91 NW2d 269 (1958). A review of the record readily reveals that the individual defendants fall within the purview of this statute and, thus, are covered by the umbrella of immunity.[5] It is to be noted that plaintiff admitted that defendants Sorum, Pearson and Geiger were officers of the Traverse City State Hospital in his answer to defendants' motion to dismiss in the Saginaw County action, paragraph 8.

---

[5] As to tort liability of public officers, see, generally, 2 Harper & James, Torts, § 29.8, p 1632.

Thus, on the basis of this statute and its definitions, any action against the state, the Department of Mental Health, Traverse City State Hospital, or the individual defendants is barred. As we find the action barred, it is unnecessary to discuss the appellant's further assertions as to the unconstitutionality of the Court of Claims act.

Appellant's assertions as to notice provisions in the Court of Claims act are answered by *Reich, supra,* and *Reich v State Highway Commission,* 43 Mich App 284; 204 NW2d 226 (1972).

Affirmed. No costs, a public question being involved.

All concurred.