PICHETTE v MANISTIQUE PUBLIC SCHOOLS

Docket No. 55472. Argued October 6, 1977 (Calendar No. 1).—Decided
    August 30, 1978.

    Louis Pichette, for himself and as next friend of Jeffrey Pichette,
    a minor, brought a negligence action for injuries Jeffrey sus-
    tained on a playground slide adjacent to the Lincoln Elemen-
    tary School of the defendant, Manistique Public Schools. The
    Schoolcraft Circuit Court, William F. Hood, J., granted sum-
    mary judgment for the defendant under the governmental tort
    liability act because he found that the operation of a school
    playground was a governmental function and that the slide was
    not a "building" under the statute. The Court of Appeals,
    Bashara and O'Hara, JJ. (D. E. Holbrook, P.J., dissenting),
    affirmed (Docket No. 16384). Plaintiffs appeal. *Held:*

    The decision of the Court of Appeals is reversed and the case
    is remanded to the trial court for further proceedings.

    The permanently attached slide on the defendant's school

---

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 27
    *et seq.,* 42 *et seq.*
[4, 5] 57 Am Jur 2d, Municipal School, and State Tort Liability §§ 21,
    38 *et seq.,* 62, 73 *et seq.*
[4, 5, 8] Tort liability of public schools and institutions of higher
    learning for injuries due to condition of grounds, walks, and
    playgrounds. 37 ALR3d 738.
[4, 8] Modern status of doctrine of sovereign immunity as applied to
    public schools and institutions of higher learning. 33 ALR3d 703.
[4, 8] Tort liability of public schools. 86 ALR2d 489.
[5, 9] 57 Am Jur 2d, Municipal, School, and State Tort Liability
    §§ 150-155.
[6, 10] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 103 *et seq.,*
    342 *et seq.*
    57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 62,
    150-155.
[7] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 57,
    58.
[8] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 38 et
    seq., 150-155.
[11] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 65-
    68.

playground comes within the "public buildings" exception of the governmental immunity statute.

Justice Fitzgerald, joined by Chief Justice Kavanagh and Justice Levin, wrote:

1. The threshold question in determining whether a government agency is immune from tort liability is whether a particular activity is one in which the agency is engaged "in the exercise or discharge of a governmental function". Since the Legislature has used a term of judicial origin without further definition, it is incumbent upon the Court to define the scope of the term. However, this does not mean that with the enactment of the governmental tort liability statute the Legislature froze for all time state governmental immunity as it was then recognized by case law.

2. With the great expansion of governmental activity in recent years, there are many services provided by local and state agencies which are not essentially governmental in nature. Immunity has become a policy question of determining where the government *should* be able to act or to remain passive without compensating citizens adversely affected by the decision. Public policy dictates a narrow construction of the term, keeping in mind the fact that the ability of government to govern would be seriously jeopardized if the exercise of discretion in the formulation of governmental policy were exposed to tort liability. However, this does not support the conclusion that the operation of governmental agencies would be undermined by making them liable for their tortious acts or omissions in the course of their operation.

3. The test of "governmental function" under the immunity statute must be phrased in terms of the nature of the specific function. A function is not "governmental" in this context unless the particular activity that this function entails is uniquely associated with those activities having no common analogy in the private sector because they reflect the imperative element in government, the implementation of its right and duty to govern. Thus, a government is immune only when it is planning and carrying out duties which, due to their peculiar nature, can only be done by a government. The determination is whether the precise action allegedly giving rise to liability is *sui generis* governmental—of essence to governing.

4. In the instant case, the defendant was providing for the operation of a playground. Although the defendant's *decision* to operate the playground would be protected by governmental immunity, the defendant should not escape liability for the negligent acts or omissions of its employees in the operation of

that playground. The defendant was not engaged "in the exercise or discharge of a governmental function".

5. The permanently attached slide located on defendant's school playground also comes within the "public buildings" exception of the governmental immunity statute. The Legislature intended to protect the general public from injury by imposing upon governmental agencies the duty to maintain safe public places, whether they are public highways or public buildings. It is of little importance that the slide was not *itself* a public building, or was on the premises of a public building rather than inside the building. Jeffrey Pichette would not have encountered the dangerous condition which led to his injuries but for the existence of the defendant's school. To bar plaintiffs' recovery because Jeffrey was injured on the premises of a public building rather than *inside* the building would have no basis either in logic or justice.

6. The purchase of a liability insurance policy by a governmental agency does not constitute a waiver of the defense of governmental immunity. The Legislature made its position on this issue abundantly clear by the enactment of a statute so providing.

Justice Blair Moody, Jr., agreed that the slide in the instant case comes within the "public buildings" exception of the governmental tort liability statute and that a government agency does not waive its tort immunity by purchasing a policy of general liability insurance. He wrote that it is not necessary to reach the question of whether the defendant was engaged in a governmental function, and accordingly, that the case need not be decided on that basis.

Justice Williams agreed with Justice Fitzgerald in the reasoning and result that the slide in the instant case comes within the "public buildings" exception of the governmental tort liability statute and that a governmental agency does not waive its tort immunity by purchasing a policy of general liability insurance. However, he disagreed with Justice Fitzgerald's reasoning and result on whether the defendant was engaged in a governmental function.

Justice Ryan, concurring, wrote that case law has recognized that the operation of a school playground is a governmental function because school districts are governmental agencies and their functions are governmental in nature, and that the operation of a school playground comes within the "common good of all" definition of governmental function. The defendant was engaged in the exercise or discharge of a governmental

function in the operation of its playground. However, the Legislature, by enacting the public building exception to the governmental tort liability act, intended to impose a duty on governmental agencies to repair and maintain not only public buildings, but also all those constructions upon the premises adjacent to the building, whether attached or unattached to the main structure, which exist for the purpose of facilitating the use and enjoyment of the principal edifice. This duty of repair and maintenance is limited, therefore, and does not extend to all "public places"; a finding of a legislative intent to impose liability upon governmental agencies for their failure to maintain "safe public places" is not necessary to resolve this case and speaks much too broadly. A slide permanently affixed to a school playground on the premises adjacent to the school building exists for the purpose of facilitating the use and enjoyment of that building and is thus within the public building exception. Consequently, the defendant may be liable for injuries caused by its negligence in failing to properly repair and maintain the slide.

Justice Coleman, dissenting in part, agreed with Justice Fitzgerald that the purchase of liability insurance does not constitute a waiver of the defense of governmental immunity. But she agreed with Justice Ryan that the operation of a school playground is a governmental function. She also disagreed with Justice Fitzgerald's conclusion that the Legislature intended in excepting negligent maintenance of highways and public buildings to except *all* "public places" from governmental immunity. The words "highways" and "buildings" have common, historical meanings which the Legislature intended to apply in carving out this assumption of liability from statutory governmental immunity. The Court has attempted to circumvent the governmental immunity statute, or to eliminate it in effect, by creating common-law exceptions to the statute, for example by redefining the word "building". The problem is that the Court does not know where the proposed statutory remodeling will lead, attractive as it may be. The more the Court tinkers with the present law of governmental immunity, the deeper it digs itself into the mire of litigation and into unknown legal and social hazards. It is time to employ judicial restraint and encourage the Legislature to examine the present course of governmental immunity towards the goal of revising and, at a minimum, clarifying the statutes.

Opinion by Fitzgerald, J.

1. States — Torts — Governmental Immunity — Governmental Function.

The threshold question in determining whether a government agency is immune from tort liability is whether a particular activity is one in which a government agency is engaged in the exercise or discharge of a "governmental function" (MCL 691.1407; MSA 3.996[107]).

2. States — Torts — Governmental Immunity — Governmental Function — Common Law.

*It is incumbent upon the Court to define the scope of a "governmental function" where the Legislature used that term of judicial origin without further definition; however, this does not mean that with the enactment of the governmental tort liability act the Legislature froze for all time the state governmental immunity as it was then recognized by case law (MCL 691.1407; MSA 3.996[107]).*

3. States — Torts — Governmental Immunity — Governmental Function — Words and Phrases.

*"Governmental function" means that the particular activity is uniquely associated with those activities having no common analogy in the private sector because they reflect the imperative element in government, the implementation of its right and duty to govern; a government is immune only when it is planning and carrying out duties which, due to their peculiar nature, can only be done by a government, i.e., the action is sui generis governmental (MCL 691.1407; MSA 3.996[107]).*

4. Schools and School Districts — Governmental Immunity — Governmental Function — Playgrounds.

*A school district was not engaged in the exercise or discharge of a governmental function within the meaning of the statute by providing for the operation of a public school playground; therefore the school district should not escape liability for the negligent acts or omissions of its employees in the operation of that playground (MCL 691.1407; MSA 3.996[107]).*

5. Schools and School Districts — Governmental Immunity — Public Buildings.

A permanently attached slide located on a public school playground comes within the public buildings exception of the governmental tort liability statute (MCL 691.1406; MSA 3.996[106]).

6. States — Torts — Governmental Immunity — Highways — Public Buildings.

The Legislature, in providing exceptions to the general statutory grant of governmental immunity, intended to protect the general public from injury by imposing upon governmental agencies the duty to maintain safe public places, whether such places are public highways or public buildings (MCL 691.1406, 691.1407; MSA 3.996[106], 3.996[107]).

7. States — Torts — Governmental Immunity — Waiver — Insurance.

The purchase of a general liability insurance policy by a government agency does not constitute a waiver of the defense of governmental immunity (MCL 691.1409; MSA 3.996[109]).

Concurring Opinion by Blair Moody, Jr., J.

See headnotes 5-7.

Concurring Opinion by Williams, J.

See headnotes 5-7.

Concurring Opinion by Ryan, J.

See headnote 7.

8. Schools and School Districts — Governmental Immunity — Governmental Function — Playgrounds.

*Case law supports a finding that a school district is immune from liability in the operation of a school playground because the functions of school districts are governmental in nature, and also the operation of a school playground comes within the "common good of all" definition of "governmental function"; the school district is immune from tort liability for its negligence in maintaining school playground equipment unless it comes within the public building exception of the governmental tort liability act (MCL 691.1406, 691.1407; MSA 3.996[106], 3.996[107]).*

9. Schools and School Districts — Governmental Immunity — Governmental Function — Public Buildings.

*A slide permanently affixed to a public school playground on the premises adjacent to the school building exists for the purpose of facilitating the use and enjoyment of that building and is*

*thus within the public building exception of the governmental
tort liability act (MCL 691.1406; MSA 3.996[106]).*

Opinion Dissenting in Part by Coleman, J.

See headnotes 7 and 8.

10. States — Torts — Governmental Immunity — Highways —
    Public Buidings — Words and Phrases.
    *The Legislature in excepting negligent maintenance of highways
    and public buildings from statutory governmental immunity
    did not intend thereby to except all "public places"; the words
    "highways" and "buildings" have common, historical meanings
    which the Legislature intended to apply in carving out this
    assumption of liability from statutory governmental immunity
    (MCL 691.1406; MSA 3.996[106]).*

11. States — Torts — Governmental Immunity — Statutes —
    Common Law.
    *The courts should employ judicial restraint and encouarge the
    Legislature to examine the present course of governmental
    immunity towards the goal of revising and, at a minimum,
    clarifying the statutes, rather than attempting to circumvent
    the governmental immunity statute, or to eliminate it in effect,
    by creating common-law exceptions to the statute, for example
    by redefining the word "building" (MCL 691.1406; MSA
    3.996[106]).*

*Green, Renner, Weisse, Rettig, Rademacher &
Clark* for plaintiffs.

*Hansley, Neiman, Peterson, Beauchamp & Stu-
pak, P.C.,* for defendant.

Fitzgerald, J. Jeffrey Pichette, a 12-year-old,
was injured on July 17, 1971, when he went down
a slide on a playground of one of defendant's
schools. The playground was unsupervised and
unfenced, and the slide was in a state of disrepair.

Plaintiffs filed a complaint against Manistique
Public Schools in circuit court seeking damages.
The trial court granted the Manistique Public
Schools' motion for summary judgment, grounded

on governmental immunity. The Court of Appeals affirmed.

Plaintiffs raise three issues on appeal:

1) Whether the operation of a playground by a school district during the summer recess constitutes the "exercise or discharge of a governmental function" for purposes of immunity.

2) Whether a permanently attached slide located on a public school playground comes within the statutory "public buildings" exception to the doctrine of governmental immunity.

3) Whether the purchase of general liability insurance constitutes a waiver of the defense of governmental immunity. We reverse on the basis of the first and second issues and remand for trial.


I. FACTS


Plaintiffs, residents of Ferndale, Michigan, were vacationing in Manistique in July 1971. On July 17, 1971, at approximately 5:30 p.m., plaintiff Jeffrey Pichette was playing on defendant's Lincoln School playground. At that time of the year the school was not in session. The playground, which was immediately adjacent to the school, was unattended and completely accessible to the general public.

Jeffrey climbed up a slide located on the playground and slid down in a manner in which slides are expected to be used. The evidence reveals that the slide was approximately 18 feet long and 10 feet high and was embedded in concrete. The slide was constructed with a metal bottom and two wooden siderails. It is uncontroverted that the slide was old and that the wooden siderails were rotten. Jeffrey, while going down the slide, encountered an 11-inch wooden sliver from the siderail

which became dislodged and went through his right thigh. He was rushed to the local hospital where emergency surgery was required to remove the sliver. The treating physician, understandably disturbed by such an injury, summoned the city police to the hospital operating room to inform them of the circumstances of the injury and to request that the playground slide be made inaccessible to the public until it could be repaired. On that evening, at the request of the police, two school employees dismantled the slide. On the following day the remnants were removed to the city dump.

On April 28, 1972, plaintiffs Jeffrey Pichette, a minor, by his next friend, Louis Pichette, and Louis Pichette filed suit in Schoolcraft County Circuit Court against Manistique Public Schools for injuries resulting from negligence. While admitting its negligence in permitting the physical condition of the slide to deteriorate and in failing to provide supervision of the playground, defendant, on August 25, 1972, filed a motion for summary judgment in accordance with GCR 1963, 117.2(1), based on the claim that it was engaged in the exercise of a governmental function and thus immune in tort liability. MCL 691.1407; MSA 3.996(107).

In granting defendant's motion for summary judgment, the trial judge found that the operation of a playground was a governmental function, that a permanently attached slide did not come within the "public building" exception of the governmental immunity statute, MCL 691.1406; MSA 3.996(106), and that defendant's purchase of liability insurance did not constitute a waiver of the defense of governmental immunity. A divided panel of the Court of Appeals affirmed on Decem-

ber 6, 1973. 50 Mich App 770; 213 NW2d 784 (1973). Leave to appeal was granted by this Court on February 14, 1977. 399 Mich 840 (1977).

## II. ISSUES

### A.

The controlling statutory provision for governmental immunity is contained in MCL 691.1407; MSA 3.996(107). This section reads:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged *in the exercise or discharge of a governmental function.* Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed." (Emphasis added.)

This general grant of governmental immunity does not apply to actions "arising out of the performance of a proprietary function", which is defined as "any activity which is conducted primarily for the purpose of producing a pecuniary profit for the state, excluding, however, any activity normally supported by taxes or fees". MCL 691.1413; MSA 3.996(113). The governmental immunity statute also contains certain exceptions to the general grant of immunity.[1]

The threshold question then, in determining whether a governmental agency is immune from tort liability, is whether or not a particular case is one in which a government agency is "engaged in

[1] These exceptions include the following: MCL 691.1402; MSA 3.996(102), failure to keep highways fit and safe for travel; MCL 691.1405; MSA 3.996(105), negligent operation of motor vehicles; and MCL 691.1406; MSA 3.996(106), dangerous and defective buildings.

the exercise or discharge of a governmental function".

However, unlike the term "proprietary function", the term "governmental function" is nowhere defined in the statute. As Justice WILLIAMS explained in *Thomas v Dep't of State Highways*, 398 Mich 1, 9; 247 NW2d 530 (1976), " 'Governmental function' is a term of art which has been used by the courts of this state to describe those activities of government which due to their public nature should not give rise to liability at common law".

Since the Legislature has used a term of judicial origin without further definition, we find that it is incumbent upon this Court to define the scope of "in the exercise or discharge of a governmental function". We cannot accept the notion that with the enactment of the governmental immunity statute, the Legislature "froze" for all time state governmental immunity as it was then recognized by case law.[2]

In the past, analysis of the question of whether a particular governmental activity is immune followed the assumption that an activity engaged in by a governmental agency is either an immune "governmental function" or a nonimmune "proprietary function", depending on whether the activity

---

[2] In *Thomas, supra*, 17, fn 4, Chief Justice KAVANAGH and I stated:

"We do not, however, construe this sentence [the second sentence of MCL 691.1407; MSA 3.996(107)] to be an 'affirmation' of case-law precedent preserving for all time state governmental immunity heretofore recognized by case law. To read it in such a manner would be to assume that the Legislature failed to recognize that the evolution of case-law precedent is exclusively committed to the judicial branch of government. We rather find that by the last sentence of the section it was intended that the governmental immunity act was not to be construed in such a way as to alter, unless so indicated by express statutory provision, state governmental immunity as recognized by case-law precedent existing at the time of enactment. Such precedent no longer has force in light of our decision in *Pittman v City of Taylor*, 398 Mich 41; 247 NW2d 512 (1976)."

is for the "common good" or for special corporate benefit or pecuniary profit.[3] See *Gunther v Cheboygan County Road Commissioners,* 225 Mich 619; 196 NW 386 (1923).

However, a review of the case law in Michigan reveals that except to the extent that immunity has been waived by statute, virtually all activities engaged in by governmental agencies have been considered "governmental" unless some pretense could be found for labeling an activity "proprietary".[4] Following this analysis, an injured party's right of recovery would depend solely on the identity of the tortfeasor, rather than on the nature of the function being performed.

We cannot accept such a broad definition of "exercise or discharge of a governmental function" —a definition which for all practical purposes has no substantive meaning. With the great expansion of governmental activity in recent years, there are many services provided by local and state agencies which are not essentially governmental in nature.

We agree with Professor Cooperrider's analysis that:

  " 'Immunity,' no longer a logical necessity, has be-

---

[3] Professor Kenneth Culp Davis notes that "[t]he [governmental proprietary] distinction is probably one of the most unsatisfactory known to the law, for it has caused confusion not only among the various jurisdictions but almost always within each jurisdiction". 3 Davis, Administrative Law Treatise, § 25.07, p 460. See *Lykins v Peoples Community Hospital,* 355 F Supp 52 (ED Mich, 1973); *Spencer v General Hospital of Dist' of Columbia,* 138 US App DC 48; 425 F2d 479 (1969); *Elgin v Dist' of Columbia,* 119 US App DC 116; 337 F2d 152 (1964).

[4] In *Hodgins v Bay City,* 156 Mich 687; 121 NW 274 (1909), this unfortunate distinction led this Court to find that negligence in maintaining wires for lighting homes made defendant city liable but negligence in maintaining wires for lighting streets and public buildings did not. That a city could be liable for maintaining one set of wires but not another set of wires on the same pole is illustrative of the legal confusion to which this distinction inevitably leads.

come a policy question, and 'governmental function' may properly be understood as a designation for situations where the government *should* be able to act or to remain passive without compensating citizens adversely affected by the decision—a species of *privilege* extending to those instances where there are sound policy reasons for nonliability despite the existence of circumstances that would subject a nongovernmental defendant to liability." Cooperrider, *The Court, The Legislature and Governmental Tort Immunity in Michigan,* 72 Mich L Rev 187, 282 (1973).

Accordingly, we find that public policy dictates a narrow construction of "in the exercise or discharge of a governmental function" contained in MCL 691.1407; MSA 3.996(107). We are mindful of the fact that the ability of government to govern would be seriously jeopardized if the exercise of discretion in the formulation of governmental policy were exposed to tort liability. Indeed, as Professor Kenneth Culp Davis has noted:

"A city should not be liable for damage done by a zoning ordinance, which necessarily reduces the value of some property. Nor should the state be liable to the seller of a harmful drug if it enacts a statute prohibiting further sale of the drug, thereby destroying a profitable business." 3 Davis, Administrative Law Treatise, § 25.11, p 484.

Nevertheless, we do not believe that the operation of governmental agencies would be undermined by making those governmental agencies liable for their tortious acts or omissions done in the course of their operation. We reiterate what Chief Justice KAVANAGH and I, with the concurrence of Justice LEVIN, said in *Thomas v State Highway Dep't, supra,* p 21:

"The test then, of 'governmental function' for pur-

poses of the immunity statute, must be phrased in terms of the nature of the specific function. We conclude that a function is not 'governmental' in this context unless the particular activity that this function entails is uniquely associated with those activities having 'no common analogy in the private sector because they reflect the imperative element in government, the implementation of its right and duty to govern'. Thus, a government is immune only when it is planning and carrying out duties which, due to their peculiar nature, can only be done by a government. The mere fact that a governmental agency is doing a certain act does not make such act a 'governmental function' if a private person or corporation may undertake the same act. Thus, 'governmental function' is not delineated by questions of the broad scope of an activity undertaken or by financial or insurance considerations which may be indicative of a governmental undertaking, but rather by viewing the precise action allegedly giving rise to liability, and determining whether such action is *sui generis* governmental—of essence to governing. Supervision of road construction (as opposed to the making of decisions as to whether to build a road), operation of hospitals and schools (as opposed to planning or deciding what health services to offer or what subject to teach), operation and supervision of playgrounds and swimming pools (as opposed to deciding whether to operate such playgrounds or pools) are not governmental functions within this definition. On the other hand, certain aspects of the exercise of the executive, legislative, or judicial powers are by their very nature governmental functions and necessarily removed from the undertakings of the private sector." (*Footnotes omitted.*)

In view of the foregoing, we find in the instant case that Manistique Public Schools was not "engaged in the exercise or discharge of a governmental function," within the meaning of MCL 691.1407; MSA 3.996(107), by merely providing for the operation of a playground. While defendant's decision to operate the playground upon which Jeffrey Pichette was injured would be protected by govern-

mental immunity, defendant should not escape liability for the negligent acts or omissions of its employees in the operation of that playground.

### B.

Plaintiffs argue in the alternative that even if defendant's operation of a school playground did constitute "the exercise or discharge of a governmental function" for purposes of immunity, the permanently attached slide located on defendant's school playground comes with the "public buildings" exception of the governmental immunity statute. MCL 691.1406; MSA 3.996(106). We agree.

MCL 691.1406; MSA 3.996(106) provides, in pertinent part, as follows:

"Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building * * *."

Previous cases concerning the scope of MCL 691.1406; MSA 3.996(106) do not provide us with clear guidance in determining whether a permanently attached slide on a public school playground comes within the "public buildings" exception of the governmental immunity statute. A broken lock on a commode door was found to be the defective maintenance of a public building in *Smith v Clintondale School Dist,* 14 Mich App 153; 165 NW2d 332 (1968). Likewise, a defective door closing mechanism was held to be within the

statutory exception in *Jackson v Detroit Board of Education,* 18 Mich App 73; 170 NW2d 489 (1969). In *Green v Dep't of Corrections,* 386 Mich 459; 192 NW2d 491 (1971), a permanently installed planing machine, which all parties apparently conceded was defective, was considered to be part of the building for purposes of the statutory "public buildings" exception. However, a "mini-trampoline" in a public building, but in no way attached to it, which plaintiffs never alleged to be improperly manufactured, negligently erected, or dangerously maintained, was held not to be within the exception in *Cody v Southfield-Lathrup School Dist,* 25 Mich App 33; 181 NW2d 81 (1970).

In both *Lockaby v Wayne County,* 63 Mich App 185; 234 NW2d 444 (1975), *lv gtd* 400 Mich 814 (1977), and *Zawadzki v Taylor,* 70 Mich App 545; 246 NW2d 161 (1976), the Court of Appeals held that, on the facts of those cases, the absence of safety devices or equipment did not constitute dangerous or defective conditions of the buildings involved.[5] Following this analysis, the Court of Appeals concluded in *Bush v Oscoda Area Schools,* 72 Mich App 670; 250 NW2d 759 (1976), *lv gtd* 399 Mich 895 (1977), that plaintiff's allegation that defendant violated its statutory duty to maintain and repair public buildings was properly dismissed because the injury resulted not from the absence

[5] In *Lockaby* plaintiff, who had been jailed and evaluated as having a "mental problem", was confined in a segregated ward in the jail designed for inmates with such problems and allegedly sustained serious injuries from running into a wall. The majority of the Court concluded that the failure to provide a padded cell did not create a dangerous condition within the meaning of the "public buildings" exception of the governmental immunity statute. In *Zawadzki,* plaintiff suffered an eye injury in a school gymnasium when struck by a tennis ball hit by defendant from the adjacent tennis court. The Court rejected plaintiff's argument that the absence of netting or other screening between the courts constituted a dangerous or defective condition.

of safety devices or equipment but from the use to which the classroom was put.[6]

Defendant in the instant case would have us find that it is not liable for plaintiffs' injuries under the "public buildings" exception of the governmental immunity statute, since a permanently attached slide is not *itself* a building "according to common and approved usage of the language".[7] The Court of Appeals agreed with this analysis of the statute:

"We do not believe that in the usual commonly accepted sense of the term a slide in a playground, anchored in concrete or not, is a public 'building', statutorily speaking, and so hold." 50 Mich App 770, 776.

Further support for defendant's argument can be found in *Stanton v Garfield Twp,* 75 Mich App 537; 255 NW2d 675 (1977). In that case, the Court of Appeals, relying on its majority opinion in *Pichette,* rejected plaintiff's argument that dangerous premises adjacent to a public building should come within the "public buildings" exception of the governmental immunity statute.

However, we find that such a narrow construction of the "public buildings" exception conflicts

---

[6] In *Bush,* plaintiff was injured by an explosion in a classroom which was being used for laboratory work. The Court wrote that "[r]ather than stating facts indicating an inherently dangerous condition of the building for the contemplated use, the complaint alleges a course of classroom conduct which would be dangerous even in a properly equipped laboratory". 72 Mich App 670, 699-700 (opinion by PETERSON, J.).

[7] MCL 8.3a; MSA 2.212(1) provides for the following rule of statutory construction:

"All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

with what we perceive to be the purpose of MCL 691.1406; MSA 3.996(106). We believe that in providing for the three exceptions to the general grant of immunity contained in MCL 691.1407; MSA 3.996(107), the Legislature intended to protect the general public from injury by imposing upon governmental agencies the duty to maintain safe public places, whether such places are public highways or public buildings.

Accordingly, we find it of little importance that the slide upon which plaintiff in the instant case was injured was not *itself* a public building or was on the premises of a public building rather than inside the building. To be sure, Jeffrey Pichette would not have encountered the dangerous condition which led to his injuries but for the existence of defendant's school. To bar plaintiff recovery because he was injured by a defective condition on the premises of a public buiding, which were under the control of the governmental entity, rather than *inside* the building, would have no basis either in logic or justice. That such a narrow construction of the "public buildings" exception has no rational basis is amply demonstrated by the case at bar.

## C.

Plaintiffs urge this Court to adopt the rule that the purchase of a general liability policy of insurance by a governmental agency constitutes a waiver of the defense of governmental immunity.

Plaintiffs cite *Christie v Board of Regents of University of Michigan,* 364 Mich 202; 111 NW2d 30 (1961), in which Justice BLACK wrote that the purchase of a liability insurance policy by a governmental agency should constitute a waiver of immunity to the extent of the insurance coverage.

However, three concurring and two dissenting justices specifically refused to adopt this rule. Since this issue was decided in *Christie,* this Court and the Court of Appeals have consistently held that a governmental agency does not waive its immunity by purchasing a policy of general liability insurance. See *Sayers v School Dist No 1, Fractional,* 366 Mich 217; 114 NW2d 191 (1962); *Branum v Board of Regents of University of Michigan,* 5 Mich App 134; 145 NW2d 860 (1966); and *Cody v Southfield-Lathrup School Dist, supra.*

While a growing minority of jurisdictions has adopted the rule advanced by plaintiffs,[8] the Legislature made its position on this issue abundantly clear with the enactment of 1964 PA 170, § 9. MCL 691.1409; MSA 3.996(109) provides, in pertinent part, as follows:

"The existence of any policy of insurance indemnifying any governmental agency against liability for damages is not a waiver of any defense otherwise available to the governmental agency in the defense of the claim."

In view of the foregoing, we do not feel free to adopt what has been characterized as the "enlightened" view, as plaintiffs would have us do.

Because we have partially rejected the bases for granting defendant's motion for summary judgment, the Court of Appeals and trial court are

---

[8] See 68 ALR2d 1437, § 4, p 1448, where the annotator notes:

"In a few jurisdictions the courts have taken the view (which is worthy of characterization as enlightened) that to the extent that a liability insurance policy protects a governmental unit against tort liability, the otherwise-existing immunity of the unit is removed."

At present, this "visibly growing minority" consists of Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Minnesota, Montana, Nebraska, New Mexico, North Carolina, Ohio, Tennessee, Vermont, Wisconsin and Wyoming. See 68 ALR2d 1437, § 4, p 1448, and Later Case Service.

reversed. We remand the matter to the trial court for further proceedings in accordance with this opinion.

No costs, a public question being involved.

KAVANAGH, C.J., and LEVIN, J., concurred with FITZGERALD, J.

BLAIR MOODY, JR., J. *(concurring)*. I agree with the result and concur in sections B and C of part II of Justice FITZGERALD's opinion. Specifically, I agree with his analysis that (B) "the permanently attached slide located on defendant's school playground comes within the 'public buildings' exception of the governmental immunity statute", MCL 691.1406; MSA 3.996(106), and that (C) "a governmental agency does not waive its immunity by purchasing a policy of general liability insurance".

It is not necessary to reach the question of whether the operation of a playground by a school district during the summer recess constitutes the "exercise or discharge of a governmental function" for purposes of immunity. Accordingly, this case need not be decided on that basis.

WILLIAMS, J. *(concurring in part; dissenting in part)*. I concur with Justice FITZGERALD's result and reasoning in parts II-B and II-C of his opinion. I do not agree with either the result or reasoning of part II-A of his opinion. See my opinion in *Thomas v Dep't of State Highways,* 398 Mich 1; 247 NW2d 530 (1976).

RYAN, J. *(concurring)*. I agree that the trial court erred in granting defendant's motion for summary judgment on the basis of governmental immunity.

The operation of a playground on the premises

adjacent to a school building is a governmental function. However, a slide that is permanently affixed to that playground comes within the "public building" exception to governmental immunity

## A. GOVERNMENTAL FUNCTION

The key to determining whether the governmental immunity defense of MCL 691.1407; MSA 3.996(107) is applicable in a given case lies in ascertaining whether the governmental agency was engaged in the exercise or discharge of a governmental function. *Thomas v Dep't of State Highways,* 398 Mich 1, 9; 247 NW2d 530 (1976). That decision recognized that the Legislature, by failing to statutorily define the term "governmental function" must have intended the courts to look to common law for guidance in determining whether governmental immunity was applicable in each case. Consequently, we must turn to Michigan case law to determine whether the operation of a school playground is a governmental function.

In *Sayers v School District No 1, Fractional,* 366 Mich 217; 114 NW2d 191 (1962), five justices, signing two opinions, agreed that a school district was immune from liability in a suit to recover for injuries suffered by a child while playing on the school grounds. Both opinions recognized this immunity existed because school districts are governmental agencies and their functions are governmental in nature.

The operation of a school playground also comes within the "common good of all" definition of "governmental function" frequently cited by Michigan courts. *Gunther v Cheboygan County Road Commissioners,* 225 Mich 619, 621; 196 NW 386 (1923), citing *Bolster v City of Lawrence,* 225 Mass 387; 114 NE 722 (1917). See, also, *McCann v Michi-*

*gan,* 398 Mich 65, 79; 247 NW2d 521 (1976) (opinion of RYAN, J.), and opinions cited therein.

Thus Michigan case law supports a finding that defendant was engaged in the exercise or discharge of a governmental function in the operation of its playground.

The specific tortious activity alleged in the complaint is defendant's negligent failure to properly repair and maintain its school playground equipment. That activity comes within the ambit of the governmental function of operating a school playground. Defendant is immune from liability for its negligence in performing that function unless a slide which is permanently affixed to a school playground comes within the statutory "public building" exception to governmental immunity.

## B. PUBLIC BUILDING EXCEPTION

I do not agree with Justice FITZGERALD that the several statutory exceptions to the general grant of governmental immunity,[1] including the public building exception,[2] evidence a legislative intent to impose liability upon governmental agencies for their failure to maintain "safe public places". This finding is not necessary to resolve the case before us and speaks much too broadly.

Writing separately in *Tilford v Wayne County General Hospital (post),* 403 Mich 293; 269 NW2d 153 (1978), I concluded that the legislative intent in enacting the public building exception was to impose a duty on governmental agencies to repair and maintain not only public buildings, but also "all those constructions upon the premises adjacent to the building, whether attached or unat-

[1] MCL 691.1407; MSA 3.996(107).
[2] MCL 691.1406; MSA 3.996(106).

tached to the main structure, which exist for the purpose of facilitating the use and enjoyment of the principal edifice". This duty of repair and maintenance is limited, therefore, and does not, in my view, extend to all "public places".

However, a slide permanently affixed to a school playground on the premises adjacent to the school building exists for the purpose of facilitating the use and enjoyment of that building and is thus within the public building exception. Consequently, the defendant may be liable for injuries caused by its negligence in failing to properly repair and maintain this slide.

## C. LIABILITY INSURANCE

I agree that the purchase of a general liability policy of insurance by a governmental agency does not constitute a waiver of the defense of governmental immunity. See *Sayers, supra,* and MCL 691.1409; MSA 3.996(109).

The trial court erred in granting defendant's motion for summary judgment based on governmental immunity.

Reversed and remanded.

COLEMAN, J. *(affirming in part, dissenting in part).* Although I agree with Part II, C of Justice FITZGERALD's opinion, I do not agree with Part II, A or B.

To the contrary, I would find that the operation of a school playground is a governmental function and so concur with Part A of Justice RYAN's opinion.

I also disagree with Justice FITZGERALD's conclusion that in excepting negligent maintenance of

highways and public buildings from governmental immunity, the Legislature intended thereby to except *all* "public places".

The words "highways" and "buildings" have common, historical meanings which I believe the Legislature intended to apply in carving out this assumption of liability from statutory governmental immunity.

As I see it, our problem derives from a desire to circumvent the governmental immunity statute— or eliminate it in effect. To this end, the Court has contrived to establish by-paths *(e.g.,* some theories of nuisance and *respondeat superior,* novel "governmental function" interpretations and, now, a redefinition of "building").

So far as personal persuasion is concerned, Justice Ryan's solution is attractive. The problem is that we do not know where it will lead. It is not difficult to envision future legal (and social) engineering problems as a result of this proposed statutory remodeling, attractive as it may be.

As one of my brothers sometimes prefaces a remark, "If I were God", I would cause the Legislature to call together representatives of school districts, law enforcement agencies and various other units and levels of government and charge them to meet with financial and tax experts, insurance association members, lawyers and others with knowledge and experience bearing upon the subject of public liability. These people then would recommend to the Legislature what liabilities should be assumed by the people and precisely what and who should be immune.

From these recommendations, plus public hearings and other devices accessible to the Legislature, a more precise act could be presented. The route followed by California prior to the enact-

ment of its detailed governmental immunity act is commendable.[1]

The more the Court tinkers with the present law of governmental immunity, the deeper we dig ourselves into the mire of litigation and into unknown legal and social hazards. Seven or four—or even three—of us can change the law significantly or bend it a little here and there, but I suspect that we have made more problems than we have resolved.

In addition, there is a myth that insurance can be obtained for any kind of liability no matter how costly. However, this has ceased to be true, if it ever was. We do not know what costs or possible reserves or added taxes will be necessary even now to cover the results of our recent opinions. We do not know the impact upon small schools and communities or counties. We do not know the impact upon public parks and recreation areas and centers, tennis courts, swimming pools, hospitals and a mind-expanding list of other resources, some more necessary than others.

Because there is so much that we do not know, I conclude that it is time to employ judicial restraint and to encourage the Legislature to examine the present course of governmental immunity towards the goal of revising and, minimally, clarifying the statutes.

I would affirm.

---

[1] See Kennedy & Lynch, *Some Problems of a Sovereign Without Immunity*, 36 S Cal L Rev 161 (1963).