**John O'KEEFE, Individually and as Next Friend of Denis O'Keefe, a Minor, Plaintiffs,**

v.

**CITY OF DETROIT, a Municipal Corporation, and the Detroit City Zoo, Jointly and Severally, Defendants.**

**Civ. A. No. 84–CV–0885–DT.**

United States District Court, E.D. Michigan, S.D.

May 21, 1985.

Edward G. Youmans, Dearborn, Mich., for plaintiffs.

Laurel McGiffert, Asst. Corp. Counsel, Law Dept., Detroit, Mich., for defendants.

## MEMORANDUM OPINION

SUHRHEINRICH, District Judge.

Defendant, City of Detroit, filed a Motion for Summary Judgment with the Court on February 22, 1985, shortly after the Michigan Supreme Court announced its decision in *Ross v. Consumers Power*, 420 Mich. 567, 363 N.W.2d 641 (1985). In *Ross*, the Michigan Supreme Court thoroughly reviewed the governmental immunity doctrine, announcing comprehensive guidelines to assist the courts in construing governmental immunity issues. The disposition of this matter requires the Court to examine the *Ross* opinion with reference to the precise facts in this case.

This action arose out of an incident at the Detroit Zoological Park where plaintiff's two year old son fell into an ostrich pit. Plaintiffs' brought this action essentially alleging that the City was negligent, grossly negligent and guilty of willful and wanton misconduct in connection with the maintenance and design of the ostrich pit and in rendering assistance to plaintiff's son after his injury was incurred. Defendants resist liability on the basis that the City is immune from suit based upon the doctrine of governmental immunity. The City argues that the operation and maintenance of a zoo is a governmental function.

Plaintiffs offer two primary theories in opposition to the City's Motion for Summary Judgment. First, plaintiffs assert that the City was engaged in a proprietary function, rather than a governmental function in operating the zoo and was, therefore, not immune from liability. Secondly, plaintiffs argue that the ostrich pit falls within the "public buildings exception" to the immunity statute. M.C.L.A. § 691.1406. Each theory is discussed below.

The State's Governmental Tort Liability Act confers immunity upon governmental agencies engaged in the exercise or discharge of a "governmental function."

> Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a *governmental function.*

M.C.L.A. § 691.1407 (emphasis added).

The courts have struggled with the precise definition of activities which constitute a governmental function. As such, a substantial body of case law has evolved relative to the interpretation of this provision. "This Court has struggled for more than a century to reach a consensus on this term's definition and application in a myriad of factual situations." *Ross v. Consumers Power*, 420 Mich. at 595, 363 N.W.2d 641. In *Ross*, the court formulated a definition for the term governmental function which imparts broad immunity for "most activities" undertaken by governmental agencies. *Id.* at 621, 363 N.W.2d 641. The Michigan Supreme Court, in *Ross*, announced its "new" definition of the term governmental function.

> We therefore conclude that a governmental function is an activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law. When a governmental agency engages in mandated or authorized activities, it is immune from tort liability unless the activity is proprietary in nature or falls within one of the other statutory exceptions to the governmental immunity act....

*Id.* at 620–21, 363 N.W.2d 641.

The *Ross* court acknowledged the broad grant of immunity afforded to governmental agencies under its revised definition.

> We realize that the definition we have formulated is broad and encompasses most of the activities undertaken by governmental agencies. We have adopted this approach because we believe that this is the result envisioned by the enactors of the governmental immunity act.

*Id.* at 621, 363 N.W.2d 641.

The Court's task here, therefore, is to determine if the operation and maintenance

of a zoo is "mandated or authorized by constitution, statute or other law" in accordance with the new Michigan governmental immunity test announced in *Ross.* In an effort to make this showing, defendants' cite the Court to the Michigan Home Rule Cities Act. This Act specifically permits cities to provide by charter for the acquisition of zoological gardens and for "the costs and expenses thereof." M.C. L.A. 117.4e. Pursuant to this authority, the Detroit City Charter authorizes the operation and maintenance of the Detroit Zoological Park.

> The zoological department is headed by a 5-member commission. The members of the commission shall be appointed by and serve at the pleasure of the mayor.... The zoological department shall maintain and operate the City's zoological parks.

*Detroit City Charter,* Chapter 16, Sec. 7–1601.

The Michigan Supreme Court in one of the nine *Ross* companion cases, *Trezzi v. City of Detroit,* held that Detroit was protected by governmental immunity in the operation of a "911 emergency assistance system." *Ross,* 420 Mich. at 654, 363 N.W.2d 641. The Court reasoned that the Michigan Constitution, Art. 7 § 22, grants the power to electors of each City to adopt a charter and to adopt ordinances relating to municipal concerns. Further, as a home rule city, Detroit is responsible for the public health, peace and safety of persons and property. M.C.L.A. § 117.3(j). Detroit, the *Ross* court found, advanced the statutory and constitutional provisions by its charter and ordinances implementing its charter through the promulgation of the 911 emergency assistance system. *Id.* at 653–54, 363 N.W.2d 641.

■ The facts in the present case are quite similar. While the operation of a zoo does not appear to be expressly mandated by law, the constitutional, statutory and Detroit City Charter provisions certainly *authorize* the maintenance and operation of the zoo. *Id.* at 620–22, 363 N.W.2d 641. The Home Rule Cities Act, M.C.L.A. § 117.1 et seq., permits cities by charter to allocate funds to civic, artistic and cultural activities. M.C.L.A. § 117.4k. Further, the Detroit City Charter, Chapter 16, § 7–1601 establishes a zoological department to maintain and operate the zoological parks. These grants of authority clearly authorize the City to operate the zoo. Therefore, the Court concludes that the City of Detroit was engaged in a governmental function and entitled to immunity in its operation of the zoo.

The primary focus of the arguments of counsel, pursuant to this motion, devolved upon the statutory exceptions to the immunity statute. Plaintiffs argue that the "public buildings exception" is applicable to the case at bar, and, that the operation of a zoo is a proprietary function, operated primarily for pecuniary profit. Each of these statutory exceptions has been fully considered by the Court and is discussed below.

## I.

Plaintiffs' first attack in an attempt to penetrate the City's shield of governmental immunity focuses upon the statutory "public buildings" exception. M.C.L.A. § 691.-1406. The statute provides:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition....

M.C.L.A. § 691.1406.

Plaintiffs rely upon several cases which have construed the statutory provision as applicable to outdoor areas adjacent to public buildings. The Court notes at the outset that none of the cases relied upon by plaintiffs, nor any that the Court has discovered, extend this statutory exception to

the facts and circumstances attendant to this case.

The most recent cases construing the public buildings exception and pertinent to this case are *Pichette v. Manistique Public Schools*, 403 Mich. 268, 269 N.W.2d 143 (1978) and *Tilford v. Wayne County Hospital*, 403 Mich. 293, 269 N.W.2d 153 (1978). In *Pichette*, the court determined that the statutory public buildings exception applied to a permanently attached slide located upon school property. *Pichette*, 403 Mich. at 284, 269 N.W.2d 143. The court, in reaching its decision, rejected a narrow interpretation of the statute.

> To be sure, Jeffrey Pichette would not have encountered the dangerous condition which led to his injuries *but for the existence of defendant's school.* To bar plaintiff recovery because he was injured by a defective condition *on the premises of a public building,* which were under the control of the governmental entity, rather than *inside* the building, would have no basis either in logic or justice. That such a narrow construction of the "public buildings" exception has no rational basis is amply demonstrated by the case at bar.

*Pichette*, 403 Mich. at 285, 269 N.W.2d 143 (emphasis added).

*Pichette* fails to support plaintiffs' position for the reason that the zoo's ostrich pit is not ancillary to a public building. Rather, plaintiffs urge the Court to construe the ostrich pit as a "building" in and of itself.

Even in its avowedly broad interpretation of the public buildings exception in *Pichette*, the Michigan Supreme Court has not reached the limits propounded upon the Court by the plaintiffs herein. *Pichette* discussed the nexus between the surrounding playground and the school building. The school building in that case obviously was a structure or building in the traditional sense of the term. Here, plaintiff asks the Court to declare a manmade park structure, an ostrich pit, to be a building within the meaning of the statute.

In further support of their position, plaintiffs cite *Monfils v. City of Sterling Heights*, 84 Mich.App. 330, 269 N.W.2d 588 (1978). *Monfils*, however, offers no greater support to plaintiffs' position than *Pichette*. In *Monfils* the Michigan Court of Appeals determined that an injury to a child which occurred when the child was struck by a rock thrown from a mound of sand on a school playground, was covered by the public buildings exception. *Monfils*, 84 Mich.App. at 335, 269 N.W.2d 588. The court there concluded that a school playground, as in *Pichette*, was part of a school building within the meaning of the statute. The *Monfils* court concluded:

> Accordingly, in order to save the constitutionality of the statute this writer would expand the definition of public building in MCLA 691.1406 to include not only that which one regards as a building, but also the immediate outside physical environs owned, controlled and considered a necessary part of the essential governmental function of the building.

*Monfils*, 84 Mich.App. at 333, 269 N.W.2d 588, *citing with approval Pichette v. Manistique Public Schools*, 50 Mich.App. 770, 213 N.W.2d 784 (1973) (Holbrook, J. dissenting).

Again, as in *Pichette*, the *Monfils* court concerned itself with expanding the buildings exception statute to the surrounding grounds of a public building. These cases do not expand the definition of the term "building" to parks or other open areas, and do not support plaintiffs' argument that this Court should do so.

Finally, plaintiffs rely upon *Tilford v. Wayne County General Hospital*, 403 Mich. 293, 269 N.W.2d 153 (1978). *Tilford* involved a plaintiff injured in a parking lot while walking to an adjacent hospital. Again, as in *Pichette* and *Monfils*, the court found the hospital's parking area to be inextricably bound with the hospital it served. *Tilford*, 403 Mich. at 299, 269 N.W.2d 153.

■ The Court's duty in interpreting a statute is basically to effectuate the intent of the legislature. In this regard, the legislative intent may be ascertained from the

clear language of the statute itself or from materials which clearly reveal a legislative intent. *In Re Arnett,* 731 F.2d 358 (6th Cir.1984).

■ The statute being considered here expressly provides for the abrogation of immunity for injuries suffered by reason of dangerous or defective conditions in public buildings. M.C.L.A. § 691.1406. The cases cited by plaintiffs have extended the scope of the statute to areas surrounding public buildings or inextricably bound with a building. *See Pichette v. Manistique Schools, supra; Tilford v. Wayne County General Hospital, supra; Monfils v. City of Sterling Heights, supra.* Plaintiffs now ask the Court to judicially transform the definition of public building in the subject statute to embrace public areas such as the park-like outdoor setting of the zoo. The Court is constrained to enforce the intent of the Michigan legislature. *Marsh v. Board of Education of the City of Flint,* 581 F.Supp. 614 (E.D.Mich.1984). Where the legislature has chosen to abrogate immunity to public "buildings," the Court cannot read into the statute an intention to abrogate immunity to all public "places" absent some clear legislative intent to do so. The Court presumes the legislature chose the word "building" rather than public "place" and will not supplant plaintiffs proferred definition for that which the legislature has chosen. Therefore, the Court concludes the ostrich pit at the Detroit Zoological Park is not a building within the intendment of the buildings exception statute, M.C.L.A. § 691.1406.

## II.

Plaintiffs' second major argument is that the City's operation of the zoo is proprietary in nature. The starting point in this analysis is the Michigan Statute defining proprietary function and abrogating immunity for governmental units engaged in such functions.

> The immunity of the state shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as

herein defined. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the state, excluding, however, any activity normally supported by taxes or fees....

M.C.L.A. § 691.1413.

The issue, then, which the Court must address, is whether the City of Detroit's operation of the zoo is a proprietary function within the meaning of the above referenced statute. The most recent construction of the proprietary function test was decided by the Michigan Supreme Court in the matter of *Regulski v. Murphy,* one of the nine companion cases decided in *Ross v. Consumers Power, supra.* There, the court concluded that a school district's vocational classes to construct houses were not conducted *primarily* to realize a pecuniary profit and, therefore, was not a proprietary function. In analyzing this case the court reasoned:

> Although at one time any incidental profit generated by an activity was sufficient to defeat an agency's claim of immunity, the Legislature in § 13 has modified this rule to require that the activity be conducted *primarily* for pecuniary profit. On the basis of these facts, we conclude that the operation of the building trades class was not a proprietary function.

*Ross v. Consumers Power,* 420 Mich. at 649, 363 N.W.2d 641. (Emphasis in original).

Plaintiffs, in this case, argue that the City was engaged in the operation of the zoo primarily for profit, a proprietary function. In support, plaintiffs argue that the zoo charges admission, parking and other fees.

■ A similar argument was addressed by the Michigan Court of Appeals in *Smith v. Board of Commissioners of the Huron Clinton Metropolitan Authority,* 49 Mich. App. 280, 212 N.W.2d 32 (1973). In *Smith,* the court upheld a summary judgment decision in favor of defendant based upon undisputed facts that the defendant park au-

thority had operated the subject facility at a loss for four consecutive years. This, the Court found, was substantial evidence that the park was not being operated for profit and was not, therefore, a proprietary activity. *Id.* at 283. The facts before the Court in this action are even more persuasive. Defendant has submitted affidavits of Walter I. Stecher, City Budget Director stating that fees collected from the zoo only represent a portion of the zoo's operating cost, that remaining operating costs have annually been paid from the City's general fund and that the zoo was not operated for profit. Further, an affidavit of Beverly Davis, Business Manager of the Detroit Zoological Department states that revenues generated at the zoo only account for a percentage of its operating cost (from 40% to 72% of operating costs between 1967 and 1984). Based upon these facts and defendants' failure to proffer any contrary evidence, the Court is fully convinced that the Detroit Zoological Park is not operated primarily for a pecuniary profit. *See Smith v. Board of Commissioners of the Huron Clinton Metropolitan Authority, supra,* and *Ross v. Consumers Power Company, supra.*

### CONCLUSION

The Court's obligation in this case is to apply the law of the State of Michigan to determine whether plaintiffs' claims are barred by virtue of governmental immunity. *Bank One Trust Company, N.A. v. County of Iosco,* 597 F.Supp. 586 (E.D. Mich.1984). Based upon the foregoing analysis, the Court concludes that the City of Detroit was engaged in a governmental function in its operation and maintenance of the Detroit Zoological Park and defendants' activities did not fall within the statutory exceptions, M.C.L.A. §§ 691.1406, 1413, as argued by plaintiffs. Therefore, defendants' motion for summary judgment shall be granted. An appropriate order in accordance with this opinion shall be entered.